THE STATE v. BUTTERFIELD *et al.*, *Plaintiffs in Error.*

75 297
109 231
75 297
o142 442
75 297
f156 260

1. **Burglary**: INSTRUCTIONS. Where the evidence given in a prosecution for burglary made it impossible for the jury not to conclude that the window through which defendant effected an entrance was an outside window; *Held*, that it was not essential for the trial court specially to instruct the jury that they could not convict unless they found this fact.

2. **Larceny.** Stealing in a dwelling house is made grand larceny by statute, irrespective of the value of the property stolen. R. S. 1879, § 1309. See *State v. Brown, post*, p 317.

3. **Burglary and Larceny**: VERDICT. A verdict in a prosecution for burglary and larceny declared defendants "guilty in manner and form as charged in the indictment," and assessed the punishment, but failed to say of which offense the defendants were found guilty. *Held*, that it was nevertheless good.

4. **Larceny.** Recent possession of the property stolen, unless satisfactorily explained, is *prima facie* evidence of guilt.

5. **Practice, Criminal**: INSTRUCTIONS. On the trial of a criminal case, the court gave an instruction for defendant which was erroneous and in conflict with a correct instruction given for the State. The error was in favor of the defendant. *Held*, that it afforded no ground for reversal.

6. ———: ———. In a criminal case it is a matter of discretion with the trial court whether to permit the jury to take the instructions with them to the jury room or not.

7. ———: ———: WITNESS. The contumacy of a witness in persisting in answering a question after the court has ruled it out, furnishes no ground for reversal when the court has expressly instructed the jury to disregard the answer.

*Error to Saline Criminal Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*Boyd & Sebree* for plaintiffs in error.

*D. H. McIntyre*, Attorney General, for the State.

RAY, J.—The defendants were indicted in the criminal court of Saline county, for burglary and larceny in the same count of an indictment. The indictment charges

that defendants " feloniously and burglariously broke into and entered the dwelling house of one W. P. Walton, in which there was at the time a human being, by forcibly bursting and breaking the window of said dwelling house, with intent then and there feloniously and burglariously to steal, take and carry away certain goods and chattels, then and there being in said dwelling house; and one overcoat, of the property of John Holland, of the value of $20, and one overcoat of the value of $30 and one basket of provisions of the value of $5, of the property of W. P. Walton, in said dwelling house then and there being found, did feloniously and burglariously take, steal and carry away, against the peace and dignity of the State."

The evidence given at the trial tends to show that on the night of the 5th of March, 1881, the dwelling house mentioned in the indictment was broken into and entered by some parties, by forcibly bursting and breaking the rear window of said dwelling; that a plank had been nailed on said window, which also had inside fastenings. On the morning of the 6th this plank was found to have been taken off and the window broken open. It further appeared that said dwelling house, at the time, was owned and occupied by said Walton as a hotel, also, which was called the "City Hotel." The evidence also tends to show that the two overcoats and basket of provisions, mentioned in said indictment, were, on the night in question, in the office of said hotel or dwelling house; and that, on the morning of the 6th, they had disappeared therefrom, and could not be found anywhere, in or about the same; and that the rear window of said hotel had been burst and broken open, as aforesaid. The evidence also tends to show that said overcoats were of the value of $30. It appears also that, on the night of the burglary and larceny in question, the defendants were seen together in Brownsville, on several occasions and at several places. They were first seen, by the city marshal, about nine or ten o'clock that night. Then they were next seen by him in

the saloon in Central Hotel, on Main street; and after that they were seen about twenty minutes after twelve o'clock that night on the corner of Miller and Main streets, about 100 yards from the City Hotel, and going toward said hotel and toward the road to Lexington. Afterward, on the morning of the 7th of March, 1881, the defendants made their appearance at one of the hotels in Lexington, about thirty-five miles from Brownsville. They came together and took breakfast at the hotel in question. Butterfield had the two overcoats in question and left them in the hotel office. He, Butterfield, claimed both coats, and left one of them as security for their bill. On that afternoon, about two or three o'clock, the city marshal of Lexington arrested both the defendants at a house of prostitution in that city, and asked them where their overcoats were. They said they had none. The marshal then asked one of the women in the house for defendants' overcoats, and she gave him one of the coats. The marshal asked Butterfield whose coat that was. He said it was his. The marshal then took the defendants and went to the hotel and got the other coat. Butterfield told the Lexington marshal that he did not go into the Walton Hotel. He said he left Brownsville, and Moore caught up with him, and had the overcoats. As they were going into the Lexington hotel office, the marshal saw Butterfield drop a pair of gloves. He picked them up and asked Butterfield why he dropped the gloves. He replied that he did not want to be caught with them. The marshal afterward gave the gloves to Walton, who claimed them in the presence of the defendants. On the 7th or 8th of March, 1881, John DeLong, the city marshal of Brownsville, went to Lexington after the defendants, and brought them back to Brownsville. While in the custody of DeLong the defendants said they were "Butterfield and Moore." Butterfield said Macon Moore overtook him between Brownsville and Concordia, with the coats. Moore said they did not walk very fast between Brownsville and Concordia, because Butterfield

had a sore heel.   Butterfield said Moore brought the coats
to him.   These overcoats were fully identified as the prop-
erty of Holland and Walton, and as the same overcoats
that were in the City Hotel at Brownsville on the night of
the burglary and larceny, and that disappeared therefrom
on that occasion.   The defendants would not tell where
they got the overcoats, except as above.   The Brownsville
city marshal asked them where they got the coats, and
they replied, they did not do business that way.   They did
not want to talk much.

Italso appears, that in the progress of the trial, the
State introduced as a witness W. M. Todd, who testified
that he was yard-master of the State penitentiary at Jef-
ferson City.   The State then asked the witness the follow-
ing questions :   1st. "Have you ever seen the defendants ?"
The defendants objected to the question ; but their objec-
tion was overruled by the court, and the witness answered :
" Yes, I have seen them."   2nd.  " What are their names ?"
The defendants objected to this question also, but the court
overruled the objection, and the witness answered :  "Their
names are Mathew C. Williams and Cornelius Drums."
3rd. " How do you know ?"   This question was also ob-
jected to, the objection overruled, and the witness an-
swered : "Because I have seen them before."   4th.  "Where
did you see them ?"   This question was also objected to by
the defendants, and the court sustained the objection ; but
the witness, before he was stopped, said that he had seen them
as convicts, in the Missouri penitentiary ; that he had
turned defendant Butterfield out on the 14th of February
last, and the defendant Moore on the 1st of March, 1881.
The defendants duly excepted to these adverse rulings of
the court, and also to the answer of the witness ; and es-
pecially to the answer to the last question, which the wit-
ness proceeded to give notwithstanding his objection was
sustained by the court.   This was all the testimony.

The court, at the instance of the State, gave the fol-

lowing instructions, over the objections of the defendants, to-wit :

1. If the jury believe from the evidence that the defendants, at any time. within three years prior to the finding of the indictment in this case, to-wit : March 28th, 1881, at the county of Saline, State of Missouri, broke and entered the said dwelling house of William P. Walton, by forcibly breaking and bursting the window, in which there was at the time a human being, with the intent of stealing and carrying away any goods, wares, merchandise or other property then being in said dwelling house, then they will find the defendants guilty of burglary in the first degree, and assess their punishment at imprisonment in the State penitentiary for a term of years not less than ten. The breaking of the window by pulling off the plank and undoing the fastening is a forcible bursting and breaking within the meaning of the statute.

2. If the jury believe from the evidence that in committing the burglary the defendants also took and appropriated to their own use any of the property as described in the indictment and testified to by the witnesses, then the jury will find the defendants guilty of grand larceny, and in addition to the punishment for burglary, they will assess their punishment at imprisonment in the penitentiary for a term of years not less than two nor more than seven.

3. The court instructs the jury that the recent possession of stolen property, unless satisfactorily explained, is *prima facie* evidence of guilt.

4. If the jury have a reasonable doubt of the defendants' guilt, they should acquit; but such a doubt, to authorize an acquittal, should be a real and substantial doubt touching their guilt under all of the evidence, facts and circumstances detailed in evidence, and not a mere possibility of their innocence.

5. Although the jury may believe from the evidence that only one of the defendants, Macon Moore, actually broke and entered the house, yet if they further believe

that the other defendant was present and in any manner was aiding, assisting, advising, procuring, counseling or abetting in said breaking and entering, then said other defendant is equally guilty as though he had actually broken and entered the house.

The following instructions were given on the part of the defendants :

1. Although the jury may believe from the evidence that a burglary and larceny was committed at the residence of W. P. Walton, in Brownsville, and that shortly after its commission a part of the property stolen was found in the possession of the defendants, yet such facts alone, uncorroborated, are insufficient to establish the guilt of defendants, either as to burglary or grand larceny; and unless the jury believe from the facts and circumstances testified to by witnesses in addition to the facts above stated that the defendants broke into the hotel or dwelling house referred to by witness, and took, stole and carried away property of value, they must find for defendants.

3. The law presumes defendants innocent, and the burthen of proof is upon the State, and in order to a conviction the evidence must be strong enough as to every material fact constituting the offenses charged, to exclude every reasonable doubt of the guilt of defendants, but such doubt must be a real and substantial doubt of defendants' guilt—and not a mere possibility of their innocence.

4. Even though the jury may believe from the evidence that defendants were formerly in the penitentiary as convicts, and are bad men, they are specially instructed that such facts are not to be considered by them in determining the question of guilt or innocence of the offenses charged in this case, and if the jury are not satisfied from all the circumstances in evidence in the case, independent of such facts, that defendants committed the particular offenses charged in the indictment, they must acquit.

These instructions were read to the jury, but it appears that the court failed and refused to permit the jury

to have said instructions in their room when they retired to consider their verdict. It also appears that the jury, after retiring and considering of the verdict, returned into court the following verdict: "We, the jury, find the defendants guilty in manner and form as charged in the indictment, and assess their punishment at imprisonment in the State penitentiary for a term of twelve years."

It is insisted, for defendants, that the first, second and third instructions given on the part of the State are erroneous. The first, in that it does not instruct the jury that in order to find the defendants guilty of burglary in the first degree, they must believe that it was an outer window that was broken. The second, in that it assumes that the burglary was committed, and that the defendants were the guilty parties; and compels the jury, if they find the defendants guilty of larceny, to assess their punishment for both burglary and larceny, even if the jury find not guilty on the charge of burglary, and does not permit the jury to find the defendants guilty of larceny alone. The third, in that it weighs and comments on the evidence, is misleading and in conflict with the first instruction given for the defendants, and that the doctrine it asserts is plainly erroneous. It is also contended for defendants that the verdict of the jury is a nullity, because it is a general verdict and does not specify which of the offenses the defendants are found guilty; and that the evidence in the cause is not sufficient to support the verdict. It is also further objected that the court erred in refusing to permit the jury to have the instructions while considering of their verdict. And lastly, it is maintained that it was error in suffering the witness, Todd, to proceed with his statement, after the objection to the question had been sustained by the court. We will examine these objections in their order and see if any of them are well taken.

In the first place it must be observed that section 1292 of the Revision of 1879, defines burglary in the first degree as charged in this indictment. Section 1300, of the same

statute, fixes its punishment by imprisonment in the penitentiary at not less than ten years. The crime of grand larceny is defined by sections 1307 and 1309 of the same act, and its punishment, in a case like that charged in this indictment, is fixed by like imprisonment in the penitentiary not exceeding seven years. It will be observed also' that section 1301 of the statute, reads as follows: "If any person, in committing burglary, shall also commit larceny, he may be prosecuted for both offenses in the same count, or in separate counts of the same indictment, and, on conviction of such burglary and larceny, shall be punished by imprisonment in the penitentiary, in addition to the punishment hereinbefore prescribed for burglary, not less than two nor exceeding five years."

From the indictment in question and the evidence in support thereof, we think it clear that the objection to the

1 BURGLARY: instructions.

first instruction is not tenable. The indictment charges that the dwelling house or hotel, was broken into and entered by forcibly bursting and breaking the window of said dwelling. The evidence speaking of the window thus burst and broken, calls it the rear window of the hotel. There is absolutely nothing in the testimony, or the description of the building, that gives the slightest color to the suggestion that the window in question was an interior window, or that the building had any but outside windows. Under the facts of the case, there was, therefore, no need that the jury should be expressly told that they must believe the window in question was an outside window, as they could not under the testimony believe otherwise.

The objection to the second instruction, under the facts and law of this case, is manifestly untenable. Inas-

2. LARCENY.

much as the subject matter of the second instruction is embraced in that of the first; and, inasmuch as the larceny, if committed as charged, was perpetrated in the commission of the burglary; and, inasmuch as both offenses, by virtue of section 1301, supra, are blended in

the same count of the indictment, the two instructions may well be taken and considered together; and in such case it is not error to instruct the jury, as they were told in this second instruction. By virtue of section 1809, *supra*, "stealing in a dwelling house is made grand larceny, irrespective of the value of the property stolen." See *State v. Ramelsburg*, 30 Mo. 26, and *State v. Smith*, 30 Mo. 114.

And in this connection we may here add that in such a case the verdict rendered by the jury in this case is sufficient and proper, and furnishes no cause for a reversal. And it may be further added, that there can be no question but that the evidence in the case was amply sufficient to support the verdict so rendered.

BURGLARY AND LARCENY: verdict

The propriety of the third instruction is not an open question in this State. The rulings of this court in *State v. Robbins*, 65 Mo. 443, and the still more recent case of the *State v. Kelly*, 73 Mo. 608, and cases cited, must be accepted as decisive of this case on that point.

4. LARCENY.

And it may be added, in this connection also, that if proper instructions are given, in a criminal case, the judgment will not be reversed for the giving of others which are erroneous if they are harmless. The giving, therefore, of the first instruction for defendants, although erroneous, (being harmless and in their favor,) did not invalidate the third instruction given for the State. *State v. Hopper*, 71 Mo. 425.

5. PRACTICE, CRIMINAL: instructions

The refusal of the court to permit the jury to take the instructions with them, when they retired to consider of their verdict, furnishes no cause for a reversal of this case. Section 3555 of the Revision of 1879 regulates and is limited to the practice in civil cases, and its provisions are not extended to criminal cases, by operation of sections 1906 and 1908 of criminal procedure. In the case of the *State v. Tompkins*, 71 Mo. 613, it is held that "in criminal cases, the trial court may, in its discretion,

6. ——: ——.

permit the jury to take with them to their room the instructions and documentary evidence at the trial." Under the authority of that case, the sending or withholding the instructions from the jury, when they retired to consider of their verdict, in a criminal case, is a matter within the discretion of the trial court; and as there is no evidence, in this case, of an abuse of that discretion, the action of the court in that particular is no cause for a reversal.

The only remaining objection urged as a reason for the reversal of this cause, when examined, is based upon 7. ——: ——: the continuous conduct of the witness, Todd, witness.        in persistently answering a question, after an objection to it had been sustained by the court, rather than any erroneous rulings of the court in reference to said questions and answers. Under such circumstances, the most the court could do to correct the irregularity was to instruct the jury, as it did, to disregard the testimony of said witness in that behalf. Such misconduct of a witness furnishes no cause for a reversal of the judgment of the court. The case of the *State v. Rothschild*, 68 Mo. 52, and cases cited, which is relied on by defendants, in support of this last objection, is so unlike the present case, and the conduct and action of the court in that case, so different from that of the court in this instance, that it can scarcely be considered an authority in this case.

No error, therefore, appearing upon this record, the judgment of the trial court is affirmed. All the judges concur.