227 S.W.2d 713 (1950)
STATE
v.
JONES.
No. 41617.
Supreme Court of Missouri, Division No. 1.
March 13, 1950.
*714 J. E. Taylor, Attorney General, Frank W. Hayes, Assistant Attorney General, for respondent.
DALTON, Judge.
Defendant was convicted in the Circuit Court of the City of St. Louis on September 30, 1948 of burglary in the first degree and larceny. In accordance with the verdict of the jury, he was sentenced to 12 years imprisonment in the penitentiary for the burglary and to an additional 3 years for the larceny. He has appealed.
The State's evidence tended to show that one Patrick John O'Connor resided with his *715 family at 5869 Julian avenue in the city of St. Louis. He came home about 9 p. m., March 14, 1947, and entered his house by the rear kitchen door, unlocking it with a key and then, after he was in the house, he locked the door from the inside. There was nothing wrong with the door or lock at that time. He went into the living room, sat down on the davenette and went to sleep. About 10 p. m. he awakened and went to the basement to speak to his wife and some visitors. A few minutes later he came upstairs into the front hall and started to the kitchen. As he did so, he encountered a colored man coming from the dining room toward the kitchen with a purse in his left hand. O'Connor recognized the purse as belonging to his wife and demanded that the man put the purse down and get out. The man did not answer, but O'Connor and the man each looked at the other and continued into the kitchen, where a 110 watt light was burning. O'Connor continued to tell the man to put down the purse and get out, until he saw a gun in the man's right hand. The gun was being moved into position from the man's right hip and it was fired, the shot striking O'Connor in the left leg. The man then backed off from O'Connor toward the kitchen door, opened it with his left hand and, while keeping O'Connor "covered" with the gun in his right hand, went out through the kitchen door and disappeared. O'Connor and the man had stood facing each other in the light in the kitchen for ten or twelve seconds. The man had had no permission to enter the house.
There was a Yale lock on the kitchen door and, after the man left, the police were called and came out. They found O'Connor sitting in the kitchen in a chair with a bullet wound in the lower part of his left leg. The knob of the door had been broken off and the Yale lock had been broken. The lock had been "jimmied," it was "sprung," broken and "out of commission." The door was slightly broken around the lock. It wouldn't close. There were splinters of wood on the floor inside around the door. A "spent" bullet was found embedded in the wall.
The purse belonged to Mrs. O'Connor and had a value of seven or eight dollars. O'Connor testified that his wife told him that the purse contained $150, but objection was made and sustained to this testimony. Except for his wife's statement, O'Connor did not know how much money the purse contained. He said that only his wife would know. Her name was not indorsed as a witness and she did not testify.
O'Connor described the man as a colored man, black, a short, chunky, heavy fellow, weighing about 160-170 pounds and about five feet eight inches in height, wearing a tan topcoat, a brown hat and brownish trousers of a peg-top style.
O'Connor identified the appellant in the court room as the man seen in his home and he further identified a tan topcoat with a Carogora label as the coat appellant was wearing when he was in O'Connor's house. As stated, the burglary and larceny took place on March 14, 1947. Appellant was arrested on March 18, 1947 and, on March 19 appellant was brought to O'Connor's room in St. Mary's hospital, where O'Connor identified him as the man he had seen in his house on March 14. Appellant was dressed the same way when O'Connor saw him at the hospital as when he saw him in his house. O'Connor was positive in his identification of appellant at the hospital and at the trial. The police officer, who had arrested appellant on the basis of the description furnished by O'Connor, described the coat appellant was wearing at the time of the arrest as "a tan camel's hair or polo coat."
Evidence offered on behalf of appellant tended to establish an alibi. Appellant's girl friend, a Miss Holmes age 20, testified that on March 14, 1947 she got off from work at 4:15 p. m. and found appellant at her home when she arrived there. She went with appellant to a show at the Laclede Theatre at 7:30 p. m. They got out of the show at 11 p. m. and stopped for some beers and then went home and played cards. The girl friend's sister, a Mrs. Lee, saw them leave her home together about 6:30 p. m. on March 14, 1947, after saying that they were going to the Laclede *716 Theatre. They returned at 11:05 p. m. A Mrs. Jones, not related to appellant, saw appellant and Miss Holmes together at the Laclede or Strand Theatre on the evening of March 14, 1947. Appellant did not testify.
Appellant has filed no brief, but under Section 4150, R.S. 1939, Mo.R.S.A., it is our duty to examine the record proper for errors and it is further our duty to examine the bill of exceptions for errors, if any, assigned under Section 4125, R.S. 1939, Mo.R.S.A., in appellant's motion for a new trial. Appellant first contends that the information is insufficient to charge the offense of burglary in the first degree and larceny; and that it does not charge any offense under the law.
The information substantially follows the general language of the statute to charge burglary in the first degree under Section 4434, R.S.1939, Mo.R.S.A., except that the information charges the breaking and entering was done "by then and there feloniously and forcibly breaking the knob to a rear kitchen door." The first subdivision of the statute uses the words, "by forcibly bursting or breaking the wall or outer door * * * of such house, or the lock or bolt of such door." We think the information sufficiently charged the breaking of an outer door.
The charge of laceny is in approved form and charges that the property taken from the dwelling house was "one hundred fifty dollars, lawful money of the United States of the value of one hundred fifty dollars; of the money and personal property of said Patrick John O'Connor in said dwelling house and building then and there being found." The charges of burguary and larceny are in one count, as provided by Section 4448, R.S. 1939, Mo.R.S.A. We hold that the information was sufficient in form and substance.
Error is next assigned on the court's failure to sustain a demurrer offered on behalf of defendant at the close of the whole case. The demurrer was a general one directed to "the State's case for the reason that the State has not presented evidence sufficient to put the defendant on his defense." If there was substantial evidence supporting either charge, the demurrer was properly overruled. The grounds supporting the demurrer, as assigned in the motion for a new trial, are (1) that there was no identification of defendant as the man who committed the crime; (2) that the evidence failed to show a breaking of an outer door or the crime of burglary as provided by law; (3) that there was no evidence that the pocket book and money therein was the property of Patrick John O'Connor, the prosecuting witness; (4) that the evidence failed to show there was in fact any money in the purse or ownership as charged; and (5) that the hearsay evidence as to the money in the purse was insufficient. The positive testimony of the prosecuting witness that appellant was the man found in his home on March 14, 1947 was, under the circumstances stated, sufficient to authorize submission of the case on the issue of identification. State v. Preston, Mo.Sup., 184 S.W.2d 1015, 1016; State v. Young, 345 Mo. 407, 133 S.W.2d 404, 407.
On the issue of breaking an outer door, while there is no direct evidence that the rear kitchen door was an outer door of the house, the evidence reviewed above was entirely sufficient to show the breaking and entering of an outer door. O'Connor entered by the door in question, unlocking it and entering and then locking it from the inside. There was nothing wrong with the lock or door at that time. A short time later the knob of the door was broken off, the lock was broken and "out of commission" and the door wouldn't close. O'Connor testified further that appellant went out by this door and disappeared. The evidence was substantial and sufficient on every issue necessary to make a case for the jury on burglary in the first degree. State v. Young, supra.
The charge of larceny in the information was a charge of larceny of "one hundred fifty dollars, lawful money of the United States of the value of one hundred fifty dollars; of the money and personal property of the said Patrick John O'Connor." There was no substantial evidence that any money was taken by appellant. The proof was that he took Mrs. *717 O'Connor's purse, which had a value of seven or eight dollars. There was no substantial evidence that it contained any money. Proof of the taking of the purse was not objected to and it was competent of the issue of the burglary. The ownership of the purse was not important as to the burglary. State v. Lackey, 230 Mo. 707, 714, 132 S.W. 602.
The motion for a new trial recites that "the evidence further tended to show that said pocket book contained one hundred and fifty dollars which was not the property of the prosecuting witness, but was the property of the prosecuting witness's wife." The motion also complains that "the evidence failed to show that there was any money in the pocket book except by hearsay." At the close of the case and after defendant's general demurrer had been overruled, the record further shows the following: "The Court: I have prepared an instruction on larceny in a dwelling house, do you want that instruction given? Mr. Williams (attorney for defendant): Yes, your Honor. * * * Defendant is requesting an instruction on larceny in a dwelling." Regardless of these facts, we must hold that there was not a mere variance, but a total failure of proof of the larceny of lawful money of the United States as charged in the information. State v. Plant, 209 Mo. 307, 314, 107 S.W. 1076; State v. Shapiro, 216 Mo. 359, 374, 115 S.W. 1022; State v. McGraw, 74 Mo. 573, 574; State v. Rosefelt, Mo.App., 184 S.W. 904; State v. Roswell, 153 Mo.App. 338, 341, 133 S.W. 99. We need not determine whether, if the charge had been the larceny of O'Connor's purse, he would have had a sufficient special property interest in his wife's purse in his own home to have sustained such a charge of larceny. See Sec. 3951, R.S. 1939, Mo.R.S.A.; State v. Nicoletti, 344 Mo. 86, 125 S.W.2d 33, 36; State v. Nelson, 101 Mo. 477, 14 S.W. 718, 10 L.R.A. 39; Annotation 2 A.L.R. 353.
Error is assigned on the court's action in permitting the State to offer in evidence the coat worn by the defendant at the time of his arrest. Appellant contends the State failed to show it was the coat worn by the burglar; and that the coat offered by the State was "a camel hair coat," while the coat worn by the burglar was "a rain coat." The coat was not offered in evidence. It was exhibited to witness O'Connor, who identified it as the coat worn by the man in his house on March 14, 1947 and by the defendant when brought to the hospital. A subsequent question as to whether it was the coat "defendant was wearing" was objected to as a conclusion. The coat was exhibited before the jury, but was not offered in evidence and the sufficiency of its identification for the purpose of being received in evidence was not raised or passed upon by the trial court. The assignment is overruled.
Error is assigned on the action of the court in excluding from evidence an alleged photograph of appellant and a prior deposition of witness O'Connor. The photograph was not identified and there was no evidence as to when it was taken or by whom. Counsel stated to the court that it was a picture of appellant taken in 1944 or 1947 and was being offered to show that appellant had "never been a stocky man," didn't weigh 148 pounds and wasn't black. It was excluded "at this time" for lack of evidence as to when it was taken. That evidence was never furnished. The photograph was properly excluded because not properly identified.
Defendant offered a deposition marked as defendant's exhibit "B." The exhibit is not preserved in the record and there is nothing to show whose deposition was offered. We assume it was O'Connor's deposition, but it was never identified by any one. Counsel said the exhibit was offered to show the witness (not named) contradicted himself and told a different story on the stand from that in the deposition. Witness O'Connor was questioned about his prior deposition testimony and admitted the testimony about which he was questioned, towit, that he had referred to the tan coat worn by defendant at the hospital and now exhibited to the witness as a rain coat. He denied he had been asked if he was working in the basement immediately prior to finding the burglar in his house. Since the exhibit is not in the record and was never identified, no error *718 appears. It could not have impeached O'Connor on a material issue. State v. Cooper, 83 Mo. 698, 701.
Appellant further complains of the asking of an alleged leading and suggestive question set out in the motion. While the question complained of appears in the record, no objection was made thereto on the ground that it was leading or suggestive and no error appears.
Error is assigned on the giving of the State's instruction 1. It is contended that the instruction failed to require a finding "beyond a reasonable doubt that the defendant broke the knob and lock of an outer door of the dwelling house * * * and entered therein thereby * * *," or that "said rear kitchen door was an outer door to said dwelling house."
Instruction 1 is divided into four subdivisions and generally follows the charge in the information and purports to submit the issue of defendant's guilt of burglary in the first degree under Sec. 4434, supra, first subdivision, of grand larceny under Sec. 4448, supra, and larceny in a dwelling house, under Sec. 4460, R.S. 1939, Mo.R.S.A. While the first subdivision of the instruction on burglary in the first degree does not require a finding beyond a reasonable doubt, instructions 2 and 5 covering the proof required on the whole case required a finding of guilt beyond a reasonable doubt. This was sufficient. State v. Westmoreland, Mo.Sup., 126 S.W. 2d 202; State v. Bundy, Mo.Sup., 44 S.W. 2d 121, 125. The instruction further sufficiently required a finding that defendant "feloniously entered the rear kitchen door attached to and leading into said building by breaking the knob and lock to the rear kitchen door." It sufficiently required a finding of the breaking of an outer door. State v. Breeden, Mo.Sup., 180 S.W.2d 684, 687; State v. Butterfield, 75 Mo. 297, 304, overruled on another issue.
Appellant further contends that the court failed "to define the offense of burglary in the first degree as provided in Sec. 4434," supra, and "failed to instruct the jury upon the offense of grand larceny, as defined by Sec. 4456, R.S. 1939, Mo.R.S.A., as a part of the law of the case." While the instructions did not undertake to define burglary in the first degree, we think the instructions required a finding of essential facts to support a verdict of guilty of burglary in the first degree and to fully meet the requirements of Sec. 4434, supra. This was sufficient.
No instruction on grand larceny under Sec. 4456, supra, was required, first, because there was no evidence to sustain such a submission and, second, the court did instruct under Sec. 4460, R.S. 1939, Mo.R.S.A., on larceny in a dwelling house. This instruction required a finding that "the defendant is not guilty of burglary in the first degree" and that "defendant did wrongfully take and carry away from the dwelling house of Patrick John O'Connor goods and money of the value of one hundred and fifty dollars, or any part thereof." (Italics ours.) We have seen that only the larceny of money was charged and that there was no proof that any money was taken. The court did not err in failing to instruct on grand larceny under Sec. 4456, supra.
Error is assigned on the giving of instruction 5 as follows: "The Court instructs the jury that unless you find and believe from all the facts and circumstances given in evidence, the presence of defendant at the place of the alleged burglary and larceny and his guilt beyond a reasonable doubt, you should acquit defendant." It is contended that the instruction is "a direct comment upon the evidence and an assumption on the part of the court that he (defendant) would be guilty of the offense charged without having participated in the commission of the alleged offense, by his mere presence at the scene of the offense." We do not construe the instruction as a comment on any evidence in the case and, further, when the instruction is read with the other instructions on burden of proof, reasonable doubt, acquittal on the ground of reasonable doubt and other instructions, the jury could not have been misled. In this connection subdivision 3 of instruction 1 concluded as follows: "* * * and unless you so find the facts to be, you will acquit the defendant of the charge of burglary *719 in the first degree and also of the charge of larceny." Instruction 5 was not erroneous. State v. Shelton, 223 Mo. 118, 137, 122 S.W. 732; State v. Grant, Mo.Sup., 98 S.W.2d 761.
Appellant assigns error on the court's failure to grant a mistrial on account of the alleged improper and prejudicial argument of the assistant circuit attorney to the effect that defendant "is a dangerous man." A request for reprimand and discharge of the jury was denied. Counsel then proceeded. "You have before you a man who burglarized a dwelling house, who had a deadly weapon on him. My remarks are only to be taken into consideration where there is evidence to support them. And I submit there is overwhelming evidence to support this." The control of arguments of counsel is largely within the discretion of the trial court. Reversible error and abuse of the trial court's discretion, under the facts here, is not shown. State v. Bell, Mo.Sup., 300 S.W. 504; State v. Lynn, Mo.Sup., 23 S.W.2d 139; State v. Willhite, Mo.Sup., 159 S.W.2d 768.
Appellant further contends that "the verdict of the jury fails to find the defendant guilty of burglary in the first degree, and to find him guilty of larceny, separately and to assess his punishment for each offense separately." There is no merit in this contention, the verdict is as follows: "We, the jury in the above entitled cause, find the defendant guilty of burglary in the 1st degree and larceny, as charged in the information, and assess the punishment at imprisonment in the Penitentiary for the term of 12 years for the burglary, and for the additional term of 3 years for the larceny. Rudolph L. Klein, Jr., Foreman." The verdict is in proper form. State v. Miller, 357 Mo. 353, 208 S.W.2d 194, 203; State v. Wall, Mo.Sup., 180 S.W.2d 677; State v. Oliver, Mo.Sup., 184 S.W.2d 1007.
Finally, appellant contends that the verdict is against the weight of the evidence; that it is not based upon evidence; that the jury did not give the defendant the benefit of the reasonable doubt in his favor; and that the verdict is the result of passion and prejudice.
We have found that the verdict of guilty of burglary in the first degree is supported by substantial evidence; and that the verdict of guilty of larceny, as charged in the information, is not supported by any evidence as to the larceny of money, as charged. No other errors appear from either the record proper or the bill of exceptions. There is nothing in this record to indicate that the verdict of guilty on the charge of burglary in the first degree is the result of passion or prejudice.
For the error noted, the judgment of conviction on the larceny charge is reversed and the judgment on the burglary charge is affirmed. It is so ordered.
All concur.