STATE of Missouri, Respondent,

v.

Raymond Earl McCOLLUM, Appellant.

No. 50144.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Thomas F. Eagleton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., Jefferson City, for respondent.

COIL, Commissioner.

A jury convicted Raymond McCollum of second degree burglary and of stealing property of a value of at least $50, and the trial judge found defendant had been priorly convicted of two felonies as charged in the amended information, and sentenced him to the state penitentiary for consecutive sentences of five years for burglary and five years for stealing. See Sections 560.045, 560.156, 560.160, 560.095, 560.110, and 556.-280, RSMo 1959 and V.A.M.S. McCollum appealed but has filed no brief. We shall examine the twenty-three assignments of error in his motion for new trial.

 The first is that the amended information failed to charge the commission of a crime for the alleged reason that it did not aver what goods, wares, merchandise, and other valuable things had been stolen, the owner of the property which was alleged to have been taken, or the person who was alleged to have stolen that property. There is no merit in the contention because the amended information specifically charges that a television and a sewing machine were stolen from the residence of and were the property of one Jack Toliver and that defendant stole that property.

Assignments 2 and 11 charge, in effect, that the state failed to make a submissible case of second degree burglary and of stealing property of a value of at least $50. In determining that question, we consider the evidence from a standpoint favorable to the state and disregard evidence and inferences to the contrary. State v. Watson, Mo., 350 S.W.2d 763, 766[1]. So considered, the evidence tended to show that on November 4, 1962, Jack Toliver and his family resided in a house in Independence, Missouri; that he and his family departed in the evening of November 3 to visit in Marshall, Missouri, and left the house doors locked and its windows closed; that Toliver was notified the next morning that his house had been broken into and he returned to his home early that afternoon and, upon examination, found that there were several items of personal property missing, including a television worth $200 and a sewing machine worth $100; that later that same day at Sugar Creek Police Headquarters Toliver identified the television, sewing machine, and other property as those items which had been taken from his home; that Toliver had given permission to no one to enter his home or to take any articles therefrom. The evidence showed further that a police officer early in the morning of November 4 observed an Oldsmobile exceeding the speed limit and pursued it through several turns and until it stopped in front of a house. Harold Crump was driving the automobile and defendant and Everett Oringderff were passengers. After arresting Crump for careless and reckless driving and permitting defendant and Oringderff to depart, the officer went to the Oldsmobile to obtain some information from its city license sticker and observed various articles of property in the back seat, including a television which later was identified as the one taken from the Toliver residence. The officer listed the articles found in the automobile and those were later identified by Mr. Toliver as the property which had been taken from his home. The evidence was further that defendant made a written confession in which he admitted that early in the morning of November 4 he, Crump, and Oringderff went to the Toliver home; that he removed the screen from the back window, opened the window, and helped Crump through it; that Crump opened the back door and Oringderff entered the house while defendant remained outside as lookout; that Crump and Oringderff brought many articles out of the house, including a television which, with defendant's assistance, was placed in the Oldsmobile along with the other articles; that the three proceeded in the Oldsmobile to Oringderff's mother's house and, after stopping there, Crump was arrested; that defendant and Oringderff left and went to the basement of the home of Oringderff's sister where they stayed until that afternoon; and that defendant thought they (Crump, Oringderff, and defendant) were going to sell the articles that had been stolen.

It is clear that the state made a submissible case of burglary in the second degree and stealing. There was abundant evidence that defendant broke into and entered a dwelling house where there was no human being present at the time, with an intent to steal, Section 560.045, supra, and that defendant exercised dominion over property belonging to Mr. Toliver inconsistent with Mr. Toliver's rights by taking the same. Section 560.156, supra.

Defendant introduced the complaint and information in the case of State v. Crump, each of which charged that the same property as that involved in this case was stolen on *October* 4, 1962. Defendant contends that such evidence made the state's testimony in this case so conflicting as to be of no probative value. The state adduced evidence from which the jury reasonably could have found that the *October* date in the Crump complaint and information was a typographical error and that the property had been taken on *November* 4, 1962, as charged in the present information. In any event, the discrepancy between the Crump records and the records and testimony in the present case went to the weight

of the evidence in this case and had no decisive effect upon the question whether there was a submissible case.

New trial assignments 3 through 10 charge the erroneous admission of evidence.

■ Assignment 3 avers that the trial court erred in permitting a police officer to read from his written report which had not been offered or received in evidence. The record shows that the police officer answered that he had received a call at a certain time on November 4 from a dispatcher and had proceeded to the Toliver residence, whereupon defendant objected that the officer was reading from his report. The trial court by questions established that the paper the witness had was his report and that he was refreshing his memory from that report. The court overruled the objection and, out of the hearing of the jury, defendant's counsel asked that the record show that the witness was reading from the report and not using it to refresh his recollection. The court stated that such was not the fact and the questioning proceeded without further objection. Thus it appears that the trial judge determined as a fact that the report in question was used to refresh the witness's recollection, and the new trial averment to the contrary does not prove itself.

■ Assignment 4 charges the trial court with error in admitting state's exhibit 1, a photograph of the rear of the Toliver residence, for the stated reason that it did not purport to constitute a picture of the rear of that residence as it appeared after the alleged burglary and stealing and thus was not a fair representation of the scene. The next-door neighbor testified that the picture represented the condition of the rear of the Toliver residence as it existed at approximately 7:45 in the morning of November 4 in so far as the picture showed the back window open and the window screen on the ground beneath the window and showed the back screen door open but that, contrary to the picture,

the back door was also open so one could look in and see the stove. Such testimony was sufficient identification of the exhibit. The photograph tended to aid the jury in understanding the testimony with respect to the condition of the rear of the Toliver residence on the same day and shortly after the alleged burglary and stealing had occurred. See State v. Brown, Mo., 312 S.W. 2d 818, 822 [3–7].

■ New trial assignment 5 avers that the trial court erred in admitting state's exhibit 7 which purported to be a list of the items of property stolen from the Toliver residence on the ground that the information appearing on the exhibit amounted to hearsay in that it was a record of what Mr. Toliver or other persons had stated out of the presence and hearing of the defendant; that no proper foundation had been laid to show that the exhibit was admissible as a business record; and that there was no evidence to show that the person who prepared the list had personal knowledge of the information he recorded. The police officer who arrested Crump for speeding, under the circumstances noted in the above statement of facts, testified that page 2 of Exhibit 7 (as originally offered) was a list of the articles "that we removed from the car." After objection by defendant, the state withdrew the first page of the report and only the second page was remarked as state's Exhibit 7. The court admitted the exhibit in evidence. The arresting officer testified that he had found the articles listed on Exhibit 7 in the back seat and trunk of the car driven by Crump, and it was clear that those articles were in the automobile at the time the three persons, including defendant, were occupants of it. Mr. Toliver had theretofore testified that the articles found in the car driven by Crump, including the television and sewing machine, belonged to him and were returned to him by the police. The inference was reasonable that a list of the missing articles which Toliver had theretofore given to the police was a list of the same items or at least a portion of the same items

which were listed on state's Exhibit 7. The trial court did not err in admitting state's Exhibit 7. See State v. McBride, Mo., 366 S.W.2d 374, 378 [7].

■ New trial assignments 6 and 7 will be considered together. Assignment 6 charges error in admitting a document written in longhand which purported to be a confession of defendant, and assignment 7 assigns error in admitting state's Exhibit 9 which was a typed copy of state's Exhibit 8, for the reasons that the state failed to show that the statement was voluntarily made after defendant had been advised of his constitutional rights and, in the case of Exhibit 9, for the additional reason that it was "a carbon copy of an original document and not the best evidence."

The record shows that when a police officer testified that defendant had made a statement to him which had been reduced to writing, defendant, out of the hearing of the jury, stated that the alleged confession was not voluntary and upon request the court held a hearing out of the presence of the jury on that issue. The state adduced evidence that the initials on the first and second pages of both the written and typed statements were placed there by defendant and that the signature on the third page of each was defendant's; that prior to obtaining the statement the officer had advised defendant that he did not need to answer any questions and that anything he did say "would be used against him"; that defendant had been arrested by the Kansas City police on November 13, held there overnight, picked up by the Independence police at the Kansas City jail the next day, and that thereafter the witness and another officer questioned defendant that afternoon for perhaps two hours; that defendant did not request an attorney and the officer did not mention anything about an attorney; that he, the officer, told defendant "we had enough evidence on Mr. Crump involving Mr. McCollum" and they had "a good case against him in court," but they made no promises to defendant. The Independence police kept defendant overnight and the two officers interrogated him again the next morning and about noon the longhand statement was written by the witness in the language of the defendant. The witness denied that the officer who was with him made any statement to the effect that if defendant did not sign, he was going to "lean on him."

Defendant's testimony was that the officers indicated if he didn't make a statement they would "lean on him" and that one of the officers had the reputation for having so done on other occasions; that the officers didn't tell him that he could make or not make a statement, or that it could be used against him in court, or that he had a right to an attorney. The court questioned defendant and established that he was 28, had a sixth grade education, worked as a machine operator, had been convicted of burglary three times prior to the present charge, had been confined in Algoa the first time and in the penitentiary as a result of the other two convictions; that neither officer physically touched him. Upon the completion of the hearing, the court overruled defendant's motion that the statements be excluded on the ground that the state had not proved they were voluntary; whereupon the officer's examination was resumed in the presence of the jury and his testimony concerning the taking of the statement was substantially the same as that given by him at the hearing out of the presence of the jury.

It appears that the evidence adduced on the voluntariness of the confession was sufficient to permit the jury to find that the longhand confession and typed copy thereof (they were identical except for some formal parts in the typed copy which did not change the substance) were voluntary. Indeed, defendant's own testimony was scarcely sufficient to raise any real issue as to voluntariness, and his testimony was not repeated before the jury. That is to say, the defendant did not take the stand other than at the hearing conducted outside the presence of the jury. Furthermore, the fact that de-

fendant was not informed that he had a right to counsel did not make the confession involuntary. State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523, 526 [11, 12]. It is further apparent that both the longhand and the typed copies of the confession were originals and that each was read by and duly signed by the defendant.

■ Assignment 8 charges the trial court erred in permitting a police officer to testify as to a statement made by Oringderff following the arrest of Crump, allegedly out of the presence and hearing of defendant, to the effect that "they (meaning Oringderff, Crump, and defendant) had been working" on the ground that such statement was hearsay. The record, contrary to defendant's contention, shows that the statement was made in the presence of the defendant.

■ New trial assignment 9 is that the trial court erred in overruling defendant's motion to instruct the jury to disregard certain evidence and in refusing to declare a mistrial because of the admission thereof. The evidence set out in the motion for new trial is this question and answer contained in the direct examination of a police officer: "Q What did you do after you spoke to Crump? A Based on what he told me I went around to see Oringderff's mother * * * 'to see if the television set belonged to that lady as the man had stated to me.' " The reasons assigned for the erroneous ruling are that the answer was not responsive and was hearsay in that it was allegedly made by Crump out of the presence and hearing of defendant. The record does not support the assignment as made. The transcript shows that the police officer who arrested Crump testified as above set forth. Upon objection that the answer was not responsive and a motion that it be stricken and the jury instructed to disregard it, a colloquy occurred out of the hearing of the jury during which the court indicated that until the state had evidence that Crump, Oringderff, and defendant were acting together he would not permit questions as to conversations between the arresting officer and Crump. Defendant's counsel asked "the court to rule on our motion to discharge the jury" (no such motion had been made) and the court overruled "the motion to discharge the jury," whereupon the questioning of the arresting officer proceeded. While it is true that the court never did instruct the jury to disregard the answer given, it is also true that as a result of the colloquy the court indicated that it was ruling favorably as to defendant's contention that the conversations at that point between the arresting officer and Crump were not admissible, and no conversation had been related. The only relief asked at the end of the colloquy was that the court sustain a motion to discharge which had not been made and, even if it had, it is clear that the answer made by the officer was not improper and, in any event, the trial court did not abuse its discretion in refusing to discharge the jury.

■ Assignment 10 charges the court with error in admitting this answer to the following question: "Q Did McCollum tell you anything about it? A * * * the next morning * * * he admitted the burglary * * *," and in denying defendant's motion to discharge the jury for the stated reasons that such answer was not responsive, was a conclusion, and so prejudicial that it could not be cured by an instruction to the jury to disregard it. The transcript shows that when the police officer, who obtained defendant's confession, was being questioned with respect to the statement made to him by defendant, he said that he told the defendant that he (the defendant) didn't need to say anything; that he (the officer) couldn't compel him to do so but that he was going to question him with respect to a certain charge that "he was in for * * *." Whereupon, the question and answer set forth above was asked and made. The court sustained defendant's objection that the answer was not responsive and instructed the jury to disregard it. The motion was then made that the answer be stricken and, out of the

hearing of the jury, the further motion that the jury be discharged because the statement was highly prejudicial. Whereupon, in the hearing of the jury, the court overruled the motion to discharge and again instructed the jury "to disregard the last statement of the witness." We hold that the trial court did not abuse its discretion in refusing to declare a mistrial. See State v. Allen, Mo., 343 S.W.2d 63, 66. In any event, defendant could not have been prejudiced because the conclusion or fact stated in the above answer was established, not only by the later testimony of the same witness, but by the written confession of the defendant.

New trial assignments 12 through 15 pertain to instructions given at the request of the state and assignments 16 through 19 relate to instructions offered by defendant and refused.

Assignment 12 is that the court erred in giving instruction 2 because there was no evidence that defendant entered the Toliver residence and because the instruction failed to hypothesize facts from which the jury could have found that the acts of Crump and Oringderff in entering the Toliver residence were the acts of the defendant. There is no merit in the contention. Defendant's confession, in evidence, related that he removed the screen from the kitchen window and helped Crump through the window; that Oringderff entered through the back door which was opened by Crump, and that he, defendant, stayed outside as lookout; that he helped load the television in the back seat of the Oldsmobile; that all three left in that automobile and defendant thought they were going to sell the articles which were taken from the Toliver residence. While instruction 2 does not in itself make the acts of Crump and Oringderff the acts of defendant, instruction 6 told the jury that when a crime is committed by two or more persons jointly, whatever either does in the furtherance of the unlawful act is the act of each. (See discussion under assignment 15, infra.)

■ Assignments 13 and 14 are that the court erred in giving instructions 3 and 4 on behalf of the state for the reasons, among others, that the amended information charged defendant with stealing a television and a sewing machine, the property of Jack Toliver, and instruction 3 and 4 each permitted the jury to find defendant guilty of stealing by finding that he stole *any property* belonging to Jack Toliver. This contention as to those instructions is well taken and under our recent case of State v. McBride, supra, 366 S.W.2d 379 [8], constitutes reversible error as to defendant's conviction for the crime of stealing. Instruction 3, after hypothesizing that defendant broke into and entered the residence of Jack Toliver, continued as follows: " * * * the defendant feloniously and intentionally did steal property of any value the property of the said Jack Toliver, without the consent of the said Jack Toliver with intent to permanently deprive the said Jack Toliver of said property, with felonious intent to convert the same to his own use without any honest claim to said property, if such be your finding, then you will find the defendant guilty of Stealing and so find in your verdict."

Instruction 4 directed the jury that if it found McCollum not guilty of burglary in the second degree it could not find him guilty of stealing as defined in instruction 3; but that if the jury believed beyond a reasonable doubt that "on the 4th day of November, 1962, the defendant herein, RAYMOND EARL McCOLLUM, did then and there unlawfully, feloniously and intentionally steal property of Over the Value of $50.00, the property of Jack Toliver, located at 222 North Ash, Independence, Jackson County, Missouri, with the intent to permanently deprive the owner of said property, and with felonious intent to convert the same to his own use without any honest claim to said property and without the consent of the said Jack Toliver, if such be your finding, then you will find the defendant guilty of Stealing Over $50.00, and so find in your verdict."

Instructions 2, which submitted burglary only, and 3 and 4 were the only verdict-directing instructions and no other instruction required a finding that McCollum stole the television and the sewing machine as charged in the information. The amended information charged that McCollum on November 4, 1962, stole "One (1) television set of the value of Two Hundred and no/100 ($200.00) Dollars, and One (1) Sewing machine of the value of One Hundred Fifty and no/100 ($150.00) Dollars; of the goods and property of Jack Toliver in said building then and there being found, * * *." The evidence, heretofore stated, was that many items of personalty in addition to the television and sewing machine were taken from the Toliver residence.

The question here is identical with that considered in the McBride case, supra. We quote from that case:

"We are confronted, however, with defendant's further contention that the court erred in failing to instruct the jury that it was required to find that defendant *stole any of the property described in the information* before it could convict him of stealing. The contention must be sustained. The transcript shows that the court, by instruction No. 2, submitted the issue of burglary in the second degree with the intent to steal 'personal property of any kind and of some value, however small' kept in said shop. By instruction No. 3, the jury was directed that if it found defendant guilty of burglary as defined and explained in instruction No. 2 and 'that after breaking into and entering said building the defendant, either acting alone or jointly with another or others, took and carried away from and out of said building, goods, wares, merchandise and personal property * *; and * * * took said goods, wares, merchandise and personal property, with the felonious intent at the time to steal same, then you will find the defendant guilty of stealing in connection with said burglary in the second degree, and so say in your verdict; * * *.' The mere reading of the instruction shows that it authorized a

verdict finding defendant guilty of the felony of stealing committed in connection with the burglary if the jury found that he (either acting alone or with another) stole *any of the personal property* kept in said shop, irrespective of whether the jury found defendant had stolen *any of the four items alleged in the information to have been stolen*. In other words, to illustrate, the instruction authorized conviction of defendant if it found that he stole any of the clothing (of which there was highly substantial evidence), despite the fact that the information did not charge him with stealing clothing, or despite the fact that the jury may not have found beyond a reasonable doubt that he stole any of the items described in the information. In so instructing the jury, the trial court committed error prejudicial to defendant. State v. McGraw, 74 Mo. 573, 574; State v. Shapiro, 216 Mo. 359, 115 S.W. 1022, 1026; State v. Jones, Mo., 227 S.W.2d 713, 717 [8]. Consequently, the judgment convicting defendant of stealing in connection with commission of the burglary must be reversed and the charge of stealing remanded." State v. McBride, supra, 366 S.W.2d 379 [8].

■ Assignment 15 is that the court erred in giving instruction 6 which, as heretofore noted, told the jury that persons are equally guilty who act together with a common intent in the commission of a crime and that whatever either does in furtherance of the unlawful act is the act of each. The objection is that the instruction is abstract in form and does not hypothesize facts authorizing a finding of the jury that the acts of a third person were the acts of defendant. Our statement of the evidence demonstrates that there was substantial evidence to support the propositions that Crump, Oringderff, and defendant acted jointly with a common intent to commit and committed second degree burglary and stole Toliver's property of the value of at least $50 and thus instruction 6 correctly told the jury that under such circumstances the act and deed of either was the act and deed of each. While it would have been

preferable for instructions 2, 3, and 4 to have referred to joint action by some expression such as defendant acting jointly with others with a common intent, etc., nevertheless, instructions 2, 3, and 4, read with instruction 6, sufficiently covered the matter of the joint commission of the crimes charged, and thus it was not essential, upon this record, that instruction 2, 3, or 4 hypothesize a specific finding that defendant acted with others jointly with a common intent. State v. Washington, Mo., 364 S.W.2d 572, 575 [6–9]. And see State v. Price, Mo., 362 S.W.2d 608, 611 [4].

New trial assignment 16 avers that the trial court erred in refusing to give instruction 12 which told the jury that the opening statement of a prosecutor was not to be considered as evidence. The pertinent reasons stated in the assignment are that the subject matter was appropriate and necessary for the information of the jury, was not covered by any other instruction and therefore, upon request, defendant was entitled to the instruction. The proffered instruction was cautionary in nature, but, even so, it was in proper form and perhaps should have been given under the law as stated in State v. Chaney, Mo., 349 S.W.2d 238. In this case, however, the prosecutor's opening statement is not contained in the record and there is no attempt to indicate or demonstrate in the motion for new trial the manner in which it is claimed defendant was prejudiced by the refusal of the instruction. Under those circumstances we hold that the failure of the trial court to have given the instruction was not reversible error.

Assignment 17 charges that the trial court erred in refusing to give instruction 13 which dealt with the fact that defendant was presumed to be innocent of the crime charged. The only pertinent reason stated is that the matter was not fully covered in other instructions given and that given instruction 5 failed to define "reasonable doubt" whereas proffered instruction 13 did define that term. The rec-

ord shows that given instruction 5 was a proper instruction covering the subject of the presumption of the defendant's innocence and properly defined "reasonable doubt."

Assignment 18 charges the trial court erred in refusing instruction 14 which was on the subject of reasonable doubt. As we have said above, given instruction 5 sufficiently covered the subject of reasonable doubt and thus the trial court did not err in refusing an additional instruction. State v. Messley, Mo., 366 S.W.2d 390, 395 [14].

Assignment 19 avers that the trial court erred in refusing instruction 15 which dealt with the subject whether the defendant's statement was voluntarily made. Defendant avers that the matter is part of the law of the case, that it was appropriate in this case, necessary, and not covered by another instruction. The court gave instruction 7 which told the jury that if it found that defendant did make a voluntary statement as to the offense charged after it was alleged to have been committed, the jury must consider such statement, if any, in the light of the circumstances under which it was made, if it believed it was made and, further, that if the jury believed any such statement was not voluntary, then the statement should be disregarded entirely. Upon this record, instruction 7 was sufficient. The portion of proffered instruction 15 pertaining to whether the statement was procured "by coercion, threats or through fear, and that but for such coercion, threats or fear, such defendant would not have made such statements, then you are instructed to disregard such statement as evidence in the case," was not supported by any evidence before the jury. There were no facts in evidence supporting such a submission, even assuming arguendo that defendant's testimony before the court out of the hearing of the jury amounted to some evidence of coercion, threats, or placing in fear. That is because such evidence was not repeated from the witness stand in the presence of the jury and, con-

sequently, there was no evidence to support the hypotheses of proffered instruction 15.

■ Assignment 20 asserts that the evidence was "so weak, contradictory and conflicting as to raise a necessary inference that the verdict is the result of bias, passion and prejudice." Our statement of facts heretofore demonstrates that the evidence was neither weak, contradictory, nor conflicting.

Assignment 23 avers that the sentence as assessed by the court is excessive. We need not consider this assignment because the case must be reversed and remanded as to the conviction for stealing. We observe in passing, however, that the sentence was within the limits prescribed by law for a habitual criminal convicted of second degree burglary and stealing. See §§ 560.-095, 560.110, 556.280, supra.

■ Assignments 21 and 22, alleging that the verdict is against and contrary to the evidence and to the weight of the evidence, and to the law and the evidence, and contrary to the instructions of the court, and not responsive to the issues or to the evidence, are too general to have preserved any matter for appellate review, in that none is sufficient under the requirement of C.R. 27.20, V.A.M.R., that a motion for new trial must set forth in detail and with particularity specific grounds or causes therefor.

We have examined those record matters which we are required to review and find no prejudicial error in connection with them.

The judgment of conviction of the defendant for the crime of burglary in the second degree is affirmed. The judgment of conviction of the defendant for stealing in connection with the commission of the aforesaid burglary is reversed and the charge of stealing, as set forth in the amended information or in any amendment thereof, is remanded for further proceedings in accordance with the views herein expressed.

· HOUSER and WELBORN, CC., concur

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.