THE STATE v. TOM YOUNG, Appellant.—133 S. W. (2d) 404.

Division Two, November 22, 1939.

*Roy McKittrick,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for respondent.

ELLISON, P. J.—The appellant was convicted in the Circuit Court of the City of St. Louis under the Habitual Criminal Act of burglary in the first degree and larceny and his punishment assessed at twenty

years' imprisonment in the penitentiary for the burglary and five years for the larceny. He introduced no evidence in the circuit court and has filed no brief here. The assignments in his motion for new trial below complained of the overruling of his demurrer to the State's evidence, and of the admission of incompetent evidence.

The evidence for the State showed that about 3:30 A. M. on the night of May 4, 1937, at a dwelling house at 3035 Franklin Avenue, St. Louis, Miss Dorothy Walton was awakened by the light from a shaded table lamp in the hall coming through the opened door into her bedroom. The door had been closed and the light out when she retired about 9.30 P. M. She saw the figure of a man standing near her dresser, and at once turned on a light in her room, and called out to her landlady. The man faced her and she got a good look at him. He fled. Her driver's license, a door key and thirty-five cents, all of the value of about one dollar, were missing, and her pocket book was found on the floor in the hall. The outside windows and doors had been closed and fastened the night before according to the testimony of Miss Walton and the landlady. The front door was locked with a Yale spring lock. After the burglar fled this door was found open. There was no evidence that the lock had been broken or damaged. At the trial Miss Walton positively identified the appellant as the burglar.

█ Appellant did not attack the information on the ground about to be mentioned at the trial or in his motion for new trial. But under Section 3760, Revised Statutes 1929 (Mo. Stat. Ann., p. 3298) it is our duty to determine whether it sufficiently charges the crimes of which appellant was convicted. This, of course, refers to essential averments. [State v. Couch, 344 Mo. 78, 124 S. W. (2d) 1091; State v. Boyer, 342 Mo. 64, 69, 112 S. W. (2d) 575, 579(3); State v. Emry (Mo. Div. 2), 18 S. W. (2d) 10, 12(5).] As already stated, the conviction was for burglary in the first degree and larceny, under the Habitual Criminal Act. In consequence, he received the maximum punishment for each. [Sec. 4461, R. S. 1929, Mo. Stat. Ann., p. 3063.] This punishment aggregated twenty-five years' imprisonment in the penitentiary, whereas, if the conviction had been for burglary in the second degree and larceny it would have been only fifteen years. [Secs. 4053, 4056, R. S. 1929, Mo. Stat. Ann., pp. 2853, 2854.] The question whether the information adequately charged burglary in the first degree therefore became one of importance. The statute defining that crime, Section 4042, Revised Statutes 1929 (Mo. Stat. Ann., p. 2846), is as follows:

"Every person who shall be convicted of breaking into and entering the dwelling house of another, in which there shall be at the time some human being, with intent to commit some felony or any larceny therein, either: *First*, by forcibly bursting or breaking the wall or outer door, window or shutter of a window of such house, or the

lock or bolt of such door, or the fastening of such window or shutter; or, *second,* by breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates, then actually present, aiding and assisting; or *third,* by unlocking an outer door by means of false keys, or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree.''

The statute was construed in State v. Wilson, 225 Mo. 503, 513, 125 S. W. 479, 482, and State v. Tutt, 63 Mo. 595, 601, and the rule announced: ''It is evident, however, that our statute did intend to make a change (from the common law), not that any entering and breaking, which at common law was burglary, is not still burglary under our statute; but those cases of breaking and entering at common law, which were effected in other modes than those specified in the tenth section (Wagn. Stat., p. 454, now Sec. 4042, supra), are now burglary in the second degree under the eleventh and succeeding sections of the statute. An indictment for burglary in the first degree·under the tenth section must state, not only the breaking and entering into a dwelling house in which at the time there was a human being, with intent to commit some felony or larceny, *but that such breaking and entering was effected in one of the modes specified in that section. The manner of the breaking into a dwelling house is one of the ingredients of burglary in the first degree.* (Parenthesis and italics ours.)

The part of the information in this case charging the breaking and entering is as follows: ''with force and arms into a certain dwelling house and building of Dorothy Walton, located at No. 3035, Franklin Avenue, there situate and being, and in which said dwelling house and building there was at the time a human being, feloniously and burglariously, forcibly did break and enter, by then and there feloniously and forcibly entering the front door, with the felonious intent''—to commit a larceny. It will be noticed the only charge is that appellant broke into the house by ''feloniously and forcibly entering the front door.'' It does not charge a forcible bursting or breaking of the door or the lock or bolt thereof, under the first subdivision of the section; nor an unlocking of the door by means of false keys or by picking the lock, under the third subdivision. While the information may be sufficient to charge burglary in the second degree, we are forced to hold it is fatally defective as a charge of burglary in. the first degree.

While the Wilson and Tutt cases, supra, have not been cited in subsequent Missouri decisions on the point here under discussion, neither have they been questioned or overruled. The Tutt case after mature consideration overruled State v. Alexander, 56 Mo. 131, and followed two New York decisions, from which State our first degree burglary statute was taken; People v. Fellinger, 24 How. Prac. 341, 15 Abbot's Prac. 128; People v. Bush, 3 Parker's Crim. Rep. 553.

Further, it was ruled in Harris v. People, 44 Mich. 305, 307, 6 N. W. 677: "The various breakings resembling burglary which have been declared criminal by the Legislature, are distinguishable from the ancient offense of the common law. They owe their definition to the statute, and the statute must be consulted to ascertain their ingredients. When they are charged they must be set forth in substance, as in the statute, with all descriptive incidents, whether negative or otherwise." [See also 2 Wharton's Criminal Law (12 Ed.), sec. 1032, p. 1317.]

██ Since the case must be reversed and remanded we shall touch upon three questions that may recur on a new trial. Appellant says the evidence was insufficient to support a conviction because Miss Walton's identification testimony was based on a view of him "merely for a fleeting moment in a state of mental tension." We have heretofore conceded this fact weakens the force of such testimony. [State v. Scobee, 331 Mo. 217, 228, 53 S. W. (2d) 245, 251(3).] But it is not for that reason wholly without substance. As to the nature and elements of this kind of evidence see 20 Am. Jur., secs. 350, 380, pp. 325, 739; 16 C. J., sec. 1050, p. 547; State v. Blackmore, 327 Mo. 708, 715, 38 S. W. (2d) 32, 34(2).

Furthermore, there is no direct testimony that Miss Walton was highly excited when she saw the appellant, or that he fled *instantly* when she turned on the light in her room. She testified he looked at her about a minute. She could switch on the light from the head of her bed—that is to say, without getting up or moving about much in the dark, thereby giving him warning. We have as much right to infer he was startled and slow in getting away when the light came on as that she was deprived of the use of her faculties. The evidence indicates she acted intelligently. She identified the appellant positively. We think the question clearly was for the jury. And the same may be held without discussion of her testimony concerning the closing of the doors and windows. Though there was some contradiction between what she said and the testimony of the landlady, Mrs. Nichols, concerning whether they were together when the tour of inspection was made, yet both agreed that the windows and doors were closed and fastened.

██ Again, the information charged that the appellant entered the house through the front door. There was, as just stated, evidence that all the doors and windows had been closed and fastened when the three members of the household retired for the night. Two witnesses said the Yale lock on the front door was snapped on. The landlady testified she had not given anyone permission to enter the premises by pass key or otherwise except Miss Walton and her other roomer. The front door was found open a few minutes after the burglar fled. There was no testimony that either the door or the lock was damaged; and no direct evidence showing how entry had

been effected. Nevertheless there undoubtedly was enough circumstantial evidence to show a burglarious entry at common law or on a charge of burglary in the second degree under Section 4043, Revised Statutes 1929 (Mo. Stat. Ann., p. 2847). [State v. Kenney, 101 Mo. 160, 14 S. W. 187; State v. Warford, 106 Mo. 55, 16 S. W. 886, 27 Am. St. Rep. 322; People v. Gartland, 52 N. Y. Supp. 352; Sirmans v. State, 28 Ga. App. 122, 110 S. E. 62; Vick v. State, 132 Tex. Cr. Rep. 182, 102 S. W. (2d) 1060, 1063.]

█ But was the evidence sufficient to make a prima facie case of burglary in the first degree under the third subdivision of Section 4042, supra—in other words that entry had been effected by means of false keys or picking the lock. We think so. Since the door and lock were undamaged the burglar could have opened the door only by turning the lock. But it may be suggested if a key was used it may not have been a "false key" as mentioned in the statute, but could have been a regular key he had found, stolen, purchased or obtained fraudulently. A false key is defined in Funk & Wagnalls New Standard Dictionary as "a contrivance, or a key other than the proper key, for opening a lock, as a skeleton key or picklock." In Regina v. Oldham, 12 Eng. Law & Equity Rep. 568, the accused was charged with having in his possession "certain implements of housebreaking" including ten keys. The keys were of the ordinary kind—they were not skeleton keys or picklocks. But it was held their character was to be determined by the use to which they were to be put, and that the statute comprehended any kind of key capable of being employed and intended to be employed in housebreaking. We have so held with respect to the possession of "burglar's tools," [State v. Heflin, 338 Mo. 236, 89 S. W. (2d) 938, 103 A. L. R. 1301.]

· Certainly the structure and design of the key are not the sole factors determining its character. If it is used and usable for burglarious purposes it is "a key other than the proper key" within the above dictionary definition, when obtained without the consent of the owner of the premises to such use. A burglarious entry may be effected by fraud or artifice. [2 Wharton's Criminal Law (12 Ed.), sec. 979, p. 1281; 1 Brill, Ency. Crim. Law, sec. 468, p. 785; 139 Am. St. Rep., p. 1065, note; Bradley v. Commonwealth, 195 Ky. 432, 242 S. W. 610, 611 (4); Young v. Commonwealth, 126 Ky. 474, 104 S. W. 266, 31 Ky. Law Rep. 842, 128 Am. St. Rep., 326, 15 Ann. Cas. 1022.]

█ Finally, appellant's motion for new trial makes an assignment that the trial court erred in admitting in evidence a certified transcript showing appellant's conviction in Texas of the offense of "theft" in 1933, a sentence of from two to five years' imprisonment in the penitentiary of that state, and a discharge after service of the sentence. This transcript was introduced to bring the case within the

Habitual Criminal Act. The applicable statute, Section 4462, Revised Statutes 1929 (Mo. Stat. Ann., p. 3066), requires that such prior conviction in a foreign state shall be for "an offense which, if committed in this state, would be punishable by the laws of this state by imprisonment in the penitentiary." Appellant's objection at the trial and in his motion for new trial was that there is no crime in this State known as "theft," punishable by imprisonment in the penitentiary.

It is true there is no felony in this State denominated "theft," but it is immaterial how our statutory offenses are labeled. The question is whether the crime called theft in Texas would be punishable by imprisonment in the penitentiary if committed in Missouri—in other words is there any felony in this State corresponding to the crime of theft in Texas? Another question is how closely must the crimes in the two states correspond? Answering the latter question first, it has been said Habitual Criminal statutes are highly penal and therefore should be strictly construed. [16 C. J., sec. 3150, p. 1339.] But their purpose also is to be considered. They are enacted because the offender "by his persistence in the perpetration of crime . . . has evinced a depravity, which merits a greater punishment, and needs to be restrained by severer penalties than if it were his first offense." [State v. Moore, 121 Mo. 514, 519, 26 S. W. 345, 346.] This being the moving consideration, it is not necessary that the effense in the foreign state be identical in all its elements with one punishable as a felony in this State.

Substantial similarity is enough. Texas has a Habitual Criminal Statute requiring the infliction of the maximum punishment for a crime if it be pleaded and proven that the defendant had theretofore been convicted of "the same offense, or one of the same nature." Construing this statute, the Texas Court of Criminal Appeals in Warner v. State, 118 Tex. Cr. Rep., 351, 42 S. W. (2d) 616, said: "It is our opinion that the two expressions used in said Article 62, supra, viz.: 'The same offense' and 'of the same nature,' evidence merely the purpose of the Legislature to provide the higher punishment for him who so far approaches the attitude of an habitual criminal, as to follow one conviction by doing that which in substance, nature, and effect is the same offense, and that, though there be some differences, still the substance of the offense, the body of the crime, its collective elements, must be so nearly similar or identical as to justify the higher punishment as for the same offense as that formerly committed."

Article 1410, Chapter 8 of the Texas Penal Code, Vernon's Texas Statutes, 1936, defines theft as follows: " 'Theft' is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his conent, with intent to deprive the owner of the

value of the same, and to appropriate it to the use or benefit of the person taking." Article 1421 of the same chapter provides that: "Theft of property of the value of fifty dollars or over shall be punished by confinement in the penitentiary not less than two nor more than ten years." This Texas statute is comprehensive. As is stated in Hartman v. State, 85 Tex. Cr. Rep., 582, 213 S. W. 936, 938(1): "Any taking of property without the consent of the owner and with the present intent to deprive the owner of its value and to appropriate the same by the taker is theft, and it is uniformily held that asportation is not necessary to make out the offense."

In Missouri grand larceny is a felony, the offense consisting, among other things, of "feloniously stealing, taking and carrying away any money, goods, rights in action, or other personal property, or valuable thing whatsoever of the value of thirty dollars or more, . . . belonging to another." [Secs. 4064, 4065, R. S. 1929, Mo. Stat. Ann., pp. 2865, 2871.] There must be an asportation with intent on the part of the thief to convert the property to his own use and deprive the owner thereof. [State v. Jenkins (Mo. Div. 2), 213 S. W. 796.] Larceny or stealing ordinarily implies the idea of a taking by stealth and trespass, but the statute is held also to cover larceny by fraud or trick. [State v. Scott, 301 Mo. 409, 256 S. W. 745.] One convicted of embezzlement must be adjudged guilty of larceny and punished accordingly. [Sec. 4081, R. S. 1929, Mo. Stat. Ann., p. 2883; State v. Burgess, 268 Mo. 407, 418-9, 188 S. W. 135, 139.] And upon conviction of fraudulent conversion of lost personal property of the value of thirty dollars or more, the culprit shall be deemed guilty of grand larceny. [Sec. 4074, R. S. 1929, Mo. Stat. Ann., p. 2877.]

In other words, these several statutes and decisions *in effect* extend the range of grand larceny beyond the express provisions of Section 4064, supra, and make the crime in its several aspects substantially as comprehensive as in Texas, saving, in some instances, the element of asportation. Even in that State it is said: " 'Theft' and 'larceny' are synonymous." [Wilson v. State, 115 Tex. Cr. Rep. 308, 28 S. W. (2d) 804, 805.] Likewise, State v. Brown, 185 La. 855, 171 So. 55, 56, declares the crime of "felony theft" in Texas would be punishable in Louisiana as grand larceny. And in People v. Pace, 2 Cal. App. (2d) 464, 38 Pac. (2d) 202, 203, the court said: "Larceny, although no longer expressly defined by California laws, has a well-known meaning. The change of name from larceny to theft was 'one of form and not of substance.' " The several considerations mentioned lead us to the conclusion that the trial court ruled properly in allowing the Texas transcript to be admitted in evidence.

For the reason stated earlier the judgment is reversed and the cause remanded. All concur.