STATE v. WILLIAM BISHOP DONNELL, Appellant.—No. 39283.—184 S. W. (2d) 1008.

Division Two, February 5, 1945.

*John L. Sullivan* and *Joseph M. Walsh* for appellant.

880

*Roy McKittrick*, Attorney General, and *Robt. J. Flanagan*, Assistant Attorney General, for respondent.

BOHLING, C.—William B. Donnell appeals from a judgment imposing a sentence of fifteen years' imprisonment for robbery in the first degree by means of a dangerous and deadly weapon of the Justin T. Flint Laundry & Dry Cleaning Company of St. Louis, Missouri. He questions the submissibility of the State's case and the admissibility of certain evidence.

We think the State made a submissible case. Defendant's position is that there was no evidence warranting a finding that a letter hereinafter mentioned was ever received by one Bracey or one Freeman, the recognized perpetrators of the robbery, and that its contents do not warrant a finding that the instant robbery was referred to.

The robbery occurred about 10:30 or 10:45 A. M. on Wednesday, June 16, 1943, and $493 of the Company's money was taken. Preston Bracey and Lester Freeman used a 38 and a 45 caliber revolver, respectively. The robbers were looking for the payroll and one of the girls in the office tried to tell them the payroll had not been delivered by The Guaranty Service. Freeman fired two shots. The robbery was consummated in about 10 minutes. When they departed one robber went down the back stairway and the other went down the front stairway. Defendant left a bundle at the laundry about a half hour prior to the robbery. The robbery was reported to and broadcast by the police. Two officers in a squad car saw a man answering the description of one of the robbers in a taxi. They followed the taxi until the man got out. He looked around, saw the officers immediately behind and threw something inside the taxi. This man, Bracey, was arrested and a revolver was recovered from the

taxi and a pocketbook, taken in the robbery, was recovered from Bracey's person. Defendant was picked up on Friday for investigation. His story to the officers follows: He met Freeman on Pendleton and Finney avenues on Tuesday, June 15, 1943, and took him to his girl friend's home, where they both stayed the night of the 15th. He went to work the morning of the 16th and again saw Freeman about 2:30 P. M., when Freeman gave him two grips to take care of and to forward when Freeman got back home. He left the grips with one. Coe at 4170 Lindell boulevard. The officers secured the grips and brought Coe to the station for questioning. Coe, janitor at 4170 Lindell boulevard, testified that he was acquainted with defendant; that on Wednesday, the day of the robbery, defendant brought the two grips to him, stating he wanted to leave them until he put his truck up, and he would be by for them that evening. Two days later, Friday, defendant and the police came for the grips. The officers found in one of the grips, among other things, a letter addressed to Preston Bracey and a 45 regular automatic. Defendant admitted to the officers he had written the letter.

This letter and envelope were offered in evidence. The envelope was postmarked special delivery, St. Louis, Missouri, June 7, 1943, 8:30 P. M. The letter was dated June 6, 1943, and carried the salutation: "Dear Kid". It purported to give the addressee the "set-up." It stated the "pick-up" occurred on Mondays between 1 and 3 P. M. and the "delivery" on Wednesdays, between 9 and 11 A. M.; that the writer had been in the place many times. It stated that only one man carried "it" up and down. "The man has a long flight of steps to come up and go down; there is a back stairway out of the office and it leads to the street behind the joint. . . . The best way to play either way is just like this, clip before the man comes to pick up on Mondays or clip after he has delivered on Wednesday. . . . You see you'll have to be on hand to watch when he leaves it on Wednesday, and you'll have to be on hand to see when he comes for it on Mondays. Of the two days Wednesdays (delivery day) [is] the best—and biggest for about 250 girls works days and about 50 at night; there are about 20 or 25 drivers, the night watchman, the porters, the janitors—all of them are paid—on Wednesday. It is all cash. As for the get away. I can't find anyone who has a car that I would want to borrow, so I'd use my truck, that way the get-away would be clean. . . . If you want to clip this Wednesday get in town Wednesday morning and I'll stash you up at my chick house until after the play, we can count it, divide it and you can broom the same afternoon if you want to. Let me know so that I can make arrangements to have my truck on hand for a quick, clean get-away. . . . and bring me a piece of fire, because nothing is to stop us. . . . If you come take a cab and have the driver put you off at Pendleton and Finney.

If you can wire me what time you will arrive so that I can be sure to meet you. . . . Be sure to bring me a piece of fire. [Signed] The Saint."

The State might have developed more of the connected facts but the showing necessitates overruling defendant's contentions. Defendant said. he received the grips, one of which contained the letter, from Freeman. The envelope was addressed to Bracey, and the postage was cancelled. From this the jury could infer Bracey or Freeman had had the letter. The letter mentions two flights of stairs, and .the jury could find that both stairways were used by the robbers. It mentions "delivery" days being better than the "pick-up" days, designating the day of the week for each. The robbery was committed on Wednesday, a "delivery" day. The robbers inquired concerning the payroll; whether it has been delivered. Defendant was to furnish his truck for the "get-away." He delivered the grips received from Freeman to Coe on the same day from his truck. He met Freeman at "Pendleton and Finney" and "stashed" him at his "chick's" house. From these and other facts favorable to the State's case the inference was warranted that the instant robbery was the subject matter of defendant's letter and that he was implicated therein.

It is evident, from what we have said, that the letter and the envelope containing it were properly admitted in evidence.

 Defendant complains of the admission in evidence of State's exhibits 1 and .1a, the gun and bullets found in one of the grips defendant left with Coe. They were admissible. Defendant was with Freeman the night before the offense. Freeman had "a 45" during the robbery. Defendant received the grips from Freeman. The gun, a 45, and the bullets were identified by the officers and Coe as coming from the grips defendant received from Freeman and left with Coe. Defendant's letter insisted that Bracey furnish him with "fire." The exhibits were prima facie connected with the transaction. 22 C. J. S., p. 1207, Sec. 712; 16 C. J., p. 618, Sec. 1225; State v. Martin, 349 Mo. 639, 646[2], 162 S. W. 2d 847, 851[4]; State v. Richetti, 342 Mo. 1015, 1032, 119 S. W. 2d 330, 339[8-10].

 Defendant complains of the admission of the State's exhibits 7 and 8, but his only attack is against exhibit 8, a certified copy of his record of incarceration in the penitentiary at Joliet, Illinois. The information was drawn under the habitual criminal act (Secs. 4854, 4855, R. S. 1939), which goes to the extent of the punishment for a second or subsequent offense. The statute, so far as material here, is applicable to a convict "discharged, either upon pardon or upon compliance with the sentence," who "shall subsequently be convicted of any offense committed after such pardon or discharge." Exhibit 8 showed upon its face that defendant had been sentenced to serve from one year to life for an offense of "robbery, armed"; that he had been "paroled Oct. 2, 1941; Discharged. Not discharged; wanted

for parole violation by this institution." Defendant relies upon the case of State v. Christup, 337 Mo. 776, 779[1, 2], 85 S. W. 2d 1024[1, 2], to establish error. That case holds the act is not applicable to one having the status of an escape from the penitentiary because such a convict has not been "discharged, either upon pardon or upon compliance with the sentence." Defendant's argument is that defendant had not been pardoned nor had he complied with the sentence; i. e., he had not been discharged from the Illinois sentence. The act is subject to a strict construction and both the conviction and discharge of the accused must be pleaded and proved. State v. Austin, 113 Mo. 538, 542, 21 S. W. 31, 32; State v. Young, 345 Mo. 407, 413, 133 S. W. 2d 404, 408[13]; State v. Sumpter, 335 Mo. 620, 622[1], 73 S. W. 2d 760[1, 2]; State v. Murphy, 345 Mo. 358, 360[3], 133 S. W. 2d 398, 400[4]. Exhibit 7, a certified copy of the judgment of defendant's conviction, was admissible. Defendant's argument with respect to exhibit 8 ignores our holdings that a parole is a conditional pardon and that the act is applicable to the punishment of one convicted of a second offense while out on parole. State v. Murphy, 345 Mo. 358, 360[3], 133 S. W. 2d 398, 399, 400; State v. Asher (Mo.), 246 S. W. 911, 913[2, 4]. The instant offense was committed June 16, 1943. Exhibit 8, showing defendant's prison record, was certified to on June 30, 1943. There is no showing that defendant's parole (conditional pardon) stood revoked on June 16, 1943. However, we do not base our holding on that ground. On the record before us defendant was out on a conditional pardon, he having been paroled October 2, 1941. Until he complied with the terms of his conditional pardon by yielding himself up on its breach to discharge his obligation to society, he continued in his former status of a parolee, precluding any successful claim that the act did not apply. To sustain defendant would sanction two wrongs making a right, which runs counter to any intention of the General Assembly in providing for an increase in punishment. A convict may not avoid the provisions of the Missouri habitual criminal act by the mere breach of the conditions of his conditional pardon. We hold, having been discharged on a conditional pardon, defendant thereafter remained and at the time of the offense charged was under this record at liberty on that conditional pardon. Exhibit 8 was properly in evidence.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.