STATE of Missouri, Respondent,

v.

Ralph Strickland RUFFIN, Appellant.

No. 44755.

Supreme Court of Missouri.

Division No. 1.

Feb. 13, 1956.

Charles M. Shaw, Clayton, for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

Upon trial by jury in the Circuit Court of the County of St. Louis, defendant was found guilty of second degree burglary of a building occupied by Glaser Drug Stores, a corporation. His punishment was assessed at imprisonment in the State penitentiary for a term of two years and he was accordingly so sentenced, from which he has appealed. No brief has been filed in his behalf. We therefore examine such of the assignments of error as are set forth in detail and with particularity in his motion for new trial in accordance with 42 V.A.M.S. S.Ct. Rule 27.20 and those portions of the record required by S.Ct. Rule 28.02.

At the time herein mentioned, Glaser Drug Stores owned and operated a drugstore in a building located at the northeast corner of the intersection of Hanley Road and Wydown Boulevard in the City of Clayton. The store was on the first floor and merchandise was stored in a walled-off compartment of the basement, which was reached from a stairway leading from the first floor. There was a door at the head of the stairway. A metal door, secured against opening from the outside by means of an iron bar, was situate in the brick wall separating the portion of the basement occupied by Glaser from the general basement. A door with glass panes in the upper half thereof led from the general basement to an alley on the north side of the building.

In the store proper was kept merchandise common to retail drugstores. Four cash registers were in use. A metal safe was underneath the wrapping department at the rear of the store. At the closing of the store at 11:00 p. m., on the night of July 7, 1954, a known and recorded amount of money was left in each of the cash registers and in the safe, and the above mentioned doors and the front door were locked. At approximately the hour of 4:00 a. m., on July 8, 1954, an occupant of an apartment above the store heard and felt the shock of a terrific "pounding" that seemed to originate in the basement of the Glaser Store. After a wait of about thirty or more minutes, she called the police. Two police officers came promptly to the building, Officer Kelly going to the front

door and Officer McHale to the rear. Looking through the front glass of the building, Kelly saw two colored men crouching behind the "liquor counter", both of whom ran down the rear stairs. When McHale reached the rear basement door, he heard footsteps of more than one person running toward him from the inside, shouted "Halt", saw an object immediately inside the door, fired two shots in that direction, and called Officer Kelly. Kelly heard shouts and two pistol shots emanating from the rear of the building and went there.

Upon entry into the basement, Kelly and McHale found a Negro man lying near the door, fatally wounded by one of the pistol shots fired by McHale. Nearby they found defendant, also a Negro man, sprawled upon the floor, uninjured. Further investigation revealed that a hole approximately 12″ by 12″ had been broken through the brick wall that separated the portion of the basement occupied by Glaser from the remaining portion thereof; the doors leading from the general basement into the walled-off compartment and into the store were broken open, and the money left in each of the cash registers was gone; the safe had been removed from its place of storage and pounded with some sort of heavy instrument until the metal surface was broken and the insulating concrete-like substance had escaped through the broken metal. No fingerprints were found. None of the money missing from the cash registers or any of the instrumentalities used in breaking the brick wall or in mauling the safe were found.

Later, during the day of July 8th, defendant made two written statements to the officers as to his participation in the matter. These statements were introduced into evidence and shown to the jury, but are not contained in the transcript. It seems clear, however, that the statements are not substantially different from his testimony at the trial.

Defendant testified: He was thirty years old. He had been convicted in 1951 of receiving the earnings of a prostitute. On the night of July 7, 1954, he was at home with his wife and children. At about four o'clock on the morning of the 8th, Clarence Jackson (the man shot and killed by Officer McHale) came to his home and "asked me to get up and go help him lift up an object of some kind, he didn't say what the object was, he said, 'I want you to help me lift something.'" He said it was "right downstairs". The defendant and Clarence got into a car driven by a "white fellow", who concealed his features from defendant. When the car arrived at the rear of the drugstore, defendant said, "'You going to break into some place?' He said, 'No, I ain't going to break into no place, the door is open,' and I said, 'What's in there?' This white fellow said, 'Well, I'll be right back, Clarence, I'm going to drive around the block and I'll park here.' Well, I'm still in the dark, I don't know what's happening, I goes on in with Clarence and he takes me on upstairs there and there's the safe sitting in the middle of the floor there all beat up and battered, and he says, 'I want you to help me lift this safe,' and I took—and I said, 'No, I can't help you lift that safe,' I said, 'I want to get out of here,' so I said, 'I don't want to take no chances.' He said, 'Well, you can give me a hand with it;' I said, 'No, I'm not going to help you lift it, I don't have no gloves or anything, I ain't going to touch anything in this place, I'm going to get out of here.' And the few moments we were there debating whether I help him lift the safe or not, I started on down the stairs, and we got to the door and two shots—the first shot went off and I just fell to the floor, and I just rolled to the corner and then Clarence, he just slowly fell, he fell down beside me with his head toward my feet." Defendant denied any knowledge as to how, when or by whom any of the above described depredations had been committed.

■■ Burglary in the second degree may be committed by the breaking and entering of any building, the breaking and entering of which is not declared to be burglary in the first degree, in which valuable chattels are kept or deposited, with the intent to steal or commit any crime therein.

Section 560.070 RSMo 1949, V.A.M.S. (All statutory references herein are to such statutes.) The information charges defendant with the violation of each of the aforesaid elements of said statute by "forcibly breaking a hole in the basement wall" and by "forcibly prying a lock off an inner basement door" of the building herein above described, thus and thereby gaining entrance into the aforesaid premises. It is in due form. State v. Tipton, 307 Mo. 500, 271 S.W. 55, 57.

■ The record also shows that defendant, represented by competent counsel, was duly arraigned, pleaded not guilty, and was present throughout the trial and the after-trial proceedings; that the verdict finding defendant guilty of burglary in the second degree, as charged in the information, and assessing his punishment at imprisonment in the State Penitentiary for a term of two years is in proper form and within the punishment prescribed for burglary in the second degree by § 560.095; that defendant was granted allocution, and that thereafter judgment in due form was rendered and sentence pronounced upon him, in conformity with S.Ct. Rules 27.08 and 27.09.

■ ■ Several of defendant's assignments of error are based upon his contention that there is no evidence whereby he can be found guilty of the burglary of said building by forcibly breaking a hole in the basement wall and by forcibly prying a lock off of an inner basement door and thereby gaining an entrance therein, as charged in the information. The law is well settled that a person who conspires with another to commit a burglary may be convicted of such burglary as an actual participant although not physically present at the scene of the crime at its commission and such a conspiracy may be shown by circumstantial evidence. State v. Williams, 356 Mo. 1048, 204 S.W.2d 748, 749, and authorities therein cited.

■ Defendant's admission that he accompanied Clarence Jackson and the "white fellow" and entered the building under the circumstances shown by the evidence would warrant a finding of defendant's prior guilty knowledge of the purpose of the mission upon which he and Jackson were bent and the manner in which entry into the building had been effected. Such a finding of itself would carry with it a clear connotation of conspiracy to commit the burglary charged. Consequently, the jury would be warranted in finding defendant guilty as a conspiring principal in the breaking and entering charged in the information, even though it might also believe he was not physically present when the breaking and entering were effected. Or the jury could find from defendant's admission of his entrance into the store building from the alley in the rear at the hour of four o'clock in the morning, his passage through several doors that had been forced open and his crouching position behind a counter when first seen by Officer Kelly in company with an actual participant in the burglary, when the latter was presently engaged in the objective of the burglary, and hard upon its perpetration, that defendant was present at and an actual participant in the burglary. State v. Linders, 299 Mo. 671, 253 S.W. 716; State v. Miller, Mo.Sup., 202 S.W.2d 887, 889; State v. Grant, Mo.Sup., 275 S.W.2d 332, 334.

■ Defendant assigns error in the giving of the submission instruction (No. 1), in that, among other things, it hypothesized a finding "that in said store, shop and building there was at the time goods, wares, merchandise and personal property", on the ground that said portion of the instruction is immaterial and irrelevant to the issues presented under the information, wherein defendant was charged with breaking a hole in the outer wall and prying the lock off an inner door. Suffice to say that the statute, § 560.070, makes the facts above hypothesized an element of the crime of burglary in the second degree and the information expressly charged the facts so to be. The assignment is overruled.

■ Defendant also assigns error in the giving of said instruction in that it authorized a finding of his guilt if he "either acting alone or with the aid of another or

others broke a hole", etc. As we have here-inabove undertaken to establish, defendant is guilty as though he were the sole actual perpetrator of the burglary if he either acted alone or as a conspiring aid of an-other or others. Consequently, the charge in the information that defendant "forci-bly did break and enter" was supported by the evidence adduced, and the instruc-tion did not go beyond the charge of the information in hypothesizing the finding aforesaid.

■■ Defendant assigns error in In-struction No. 2, which, among other facts hypothesized, authorized a finding of de-fendant's guilt if defendant "was present, aiding, assisting or encouraging, or for the purpose, or with the intent to aid, assist or encourage, if necessary, any other party or parties actually burglariously breaking and entering into the premises described in the evidence with felonious intent to steal", etc. As above stated, the law and the evidence clearly warranted such a sub-mission. Neither was the instruction prej-udicially erroneous, as defendant contends, in omitting a finding that defendant "know-ingly" aided, assisted or encouraged an-other or others. The facts hypothesized, when considered in connection with activi-ties of a competent adult defendant, could hardly be interpreted to include an innocent participation. But, even if so, Instruction No. 3 clarified any misunderstanding that Instruction No. 2, standing alone, might have caused. It directed the acquittal of defendant unless the jury found beyond a reasonable doubt that "either the defendant was present at the time and place of the crime charged in the information, or that *he knew* and aided and abetted in the felo-nious breaking and entering", etc. (Em-phasis ours.) Of course, if defendant was present when the wall was opened and the lock pried from the door, he could not persuasively assert lack of a guilty knowl-edge of the purpose of such violence, and, if not present, the instruction expressly required that he knowingly aided and abet-ted therein. The assignments are over-ruled.

Error is assigned in the giving of In-struction No. 4 dealing with the guilt of defendant if he aided or abetted in the burglary, on the ground that there was no evidence that defendant aided or abetted therein and that the State attempted only to show that defendant alone committed the offense and the information so charged. For the reasons above stated, this assign-ment is without merit and is overruled.

■ Instruction No. 6 is allegedly erro-neous. It deals with the extent and man-ner in which statements made by defendant after his arrest are to be evaluated by the jury. Defendant says there was no state-ment made by him of any incriminating matter or that would justify such an in-struction. As stated, defendant has not included the statements in the transcript. But, as further stated, the record does re-flect that, in substance, the statements were of the same tenor as his testimony, and we have held that his testimony could be found by the jury to constitute incriminating ad-missions. The motion for new trial also complains of the last paragraph of the in-struction which declares that "to make a confession voluntary in nature, it is not necessary to show such confession or state-ment to be spontaneous * * *", on the ground the statements were denials of the charge upon which defendant was tried. Assuming the statements to be as defend-ant characterizes them, yet, as stated, it is clear that they did contain admissions of defendant's presence at the place of the burglary and at a time when he admitted he knew that Jackson was attempting to con-summate the larceny charged to constitute the intent with which the burglary was committed. To that extent defendant did "confess" facts that could be and obviously were construed by the jury as incriminat-ing. Furthermore, in two instances during the trial the police officers, while testifying, without objections referred to the state-ments as confessions. We are not con-vinced that the use of the word "confes-sion" in the aforesaid instruction was prej-udicially erroneous.

Defendant also assigns error in the refusal of his proffered Instruction "A", which directed his acquittal unless the jury found he was present at the time and place charged in the information, and in the refusal of his proffered Instruction "B", which likewise directed his acquittal unless the jury found he "forcibly broke a hole in the basement wall and forcibly pried a lock off an inner door" of the Glaser premises. For the reasons above stated, the two instructions would have unduly narrowed the issues to the prejudice of the State. It was not necessary to a finding of defendant's guilt that he be physically present at forcible entry into the building if he conspired in bringing about its commission and participated in the larceny thereafter immediately attempted. Neither was it necessary that he do the actual breaking if he was present aiding and abetting therein or was present for that purpose. The assignments are overruled.

Defendant assigns error in the court's permitting the manager of Glaser Drug Stores to testify: (a) to the contents of the safe, (b) to the contents of the cash registers, and (c) that certain moneys were taken from the cash registers, on the ground such testimony would shed no light upon the issue presented under the information. Such testimony tended to establish that valuable property was kept in the building and the intent with which the burglary was committed. The assignments are overruled.

Error is assigned in the refusal of the court to disqualify Officer McHale as a witness when McHale admitted that he had discussed the case with another witness in the hall after the court had made a ruling excluding all witnesses from the courtroom. At the beginning of the trial the court directed the sheriff to ask the witnesses to leave the courtroom and remain in the corridor. There is no suggestion that McHale did not comply with the rule. But, if McHale's conduct could be said to be tantamount to a violation of the rule,

which we do not say, nevertheless, the question as to whether he should thereby be disqualified rested in the sound discretion of the court, and there is no showing that its discretion was abused. State v. Compton, 317 Mo. 475, 296 S.W. 137, 138. The assignment is overruled.

Error is assigned in the court's permitting the prosecuting attorney to ask defendant, when he was at the drugstore, "did he know things were wrong at the drugstore?", on the ground it called for an operation of defendant's mind and shed no light upon the issues. The question was one of a long series propounded to defendant in an effort to get him to admit guilty knowledge of what was taking and had taken place at that time. Such questions were competent. The assignment is overruled.

Error is assigned in the court's permitting the prosecuting attorney, in his argument to the jury at the close of the case, "to impeach the statements of the defendant which he, the prosecuting attorney, introduced in evidence." The argument is not preserved in the record and the assignment does not prove itself. It is, therefore, overruled. But, in any event, the prosecuting attorney offered the statement upon the theory of an admission of an adverse party. We know of no rule whereby he is precluded from challenging any unfavorable portion thereof as false.

And, finally, error is assigned "in permitting the prosecuting attorney * * *, to refer to what happened inside the store after the alleged burglary had been committed". The assignment does not set forth in detail and with particularity the matters to which the prosecuting attorney allegedly referred or the grounds of defendant's objection thereto and is not, therefore, reviewable. S.Ct. Rule 27.20.

The judgment is affirmed.

All concur.