**STATE of Missouri, Respondent,**

v.

**Earl Lucian SATTERFIELD, Appellant.**

**No. 47962.**

Supreme Court of Missouri,

Division No. 1.

June 13, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied July 11, 1960.

 

John P. Montrey, Clayton, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

By information filed in the Circuit Court of the City of St. Louis, appellant Earl Lucian Satterfield and one J. D. Collins were jointly charged with robbery in the first degree. The information also invoked as against appellant the provisions of the so-called Habitual Criminal Act (§ 556.280 RSMo 1949, prior to its amendment, Laws 1959, S.B.No. 117, V.A.M.S.), alleging his prior conviction of five felonies, his imprisonment in accordance with the sentences imposed thereunder and his lawful discharge therefrom. A severance was granted. Upon separate trial, appellant was found guilty of robbery as charged and his punishment was assessed at imprisonment in the State Penitentiary for life. On appeal to this court he assigns error: (a) in the instructions; (b) in the refusal of the trial court to sustain certain objections to allegedly prejudicial argument made by counsel for the State; and (c) in the refusal of the court to accept a verdict tendered by the jury, the proceedings in connection therewith and the acceptance of another verdict thereafter returned by the jury.

The evidence on behalf of the State warrants a finding of the following facts:

On January 3, 1959, Theodore Stellhorn owned and operated an automobile service station located at 4355 South Broadway in the City of St. Louis. Stellhorn arrived at the station that morning about six o'clock, at which time he placed in the cash register $45.00 in cash and bills and one customer had purchased $3.30 worth of gasoline. At approximately ten minutes before seven o'clock, at which time Stellhorn was cleaning up the office, a man entered the front door. He wore a red leather-type cap that fitted loosely upon his head, a dark blue overcoat, and was badly in need of a shave. Holding one hand in his pocket, he said "This is a stick-up" and directed Stellhorn to open the cash register. Stellhorn walked to the register and opened it. The man stood behind him, holding something against Stellhorn's back with his left hand and, with his right hand, took currency and coins from the cash register which he placed in his right-hand coat pocket. Stellhorn testified the money taken consisted of one ten, two five, and fourteen one dollar bills and $9.30 in change (total $43.30).

The man then ordered Stellhorn to walk to the door. As he complied, the man followed him. Stellhorn stepped outside, followed by the man. Stellhorn struck him with his left hand, causing him to fall. The man got up and ran north. Stellhorn ran back into the office, called to his son and returned to the street. He saw the man enter a "1953 red Nash" automobile, in which a second man sat behind the driver's wheel, and which was parked 200–250 feet from the service station. The Nash went northwardly at a rapid rate of speed. Stellhorn called the police at once. Police Officer Schuchardt, acting upon directions given him by radio, arrived at Stellhorn's station a minute or so after seven, at which time he was furnished by Stellhorn with a description of the robber, to the effect he was a 40-year old, unshaven, white male, wearing a red cap, brown trousers and blue overcoat. (In a deposition priorly taken, Schuchardt had testified that the description of the robber as given him by Stellhorn was that he wore a red cap, tan or brown trousers and a brown overcoat.)

About seven o'clock that morning, Patrolman Harr, operating a one-man patrol car, also received a radio message advising police officers of the robbery and a description of the robber. As he drove the police

car southward, he saw a red Nash automobile, in which two men were riding northward. He noticed the color and make of the car and the red cap worn by one of the men. He made a "U" turn, followed these men about seven blocks and arrested them at about 7:05 a. m. Appellant, when arrested, was sitting beside the driver. Collins, "an associate of" appellant, was driving the car. Appellant wore a dark blue overcoat and gray suit. Collins wore a gray "car coat" and a red cap. Collins tried to hide the cap "over the visor of the automobile on his side of the car." Harr took these men to the police station. ·Upon a search of appellant, two five dollar bills, fourteen one dollar bills, all in "a crumpled condition", were found stuffed into the various pockets of his clothing and the sum of $9.51 in change was found in his overcoat pocket. A search of Collins revealed $14.17 in his pockets. The denominations of that money are not shown. The total amount taken from both was $47.68.

Stellhorn was called to and arrived at the police station about 7:20–7:25 a. m. He there viewed the automobile in which appellant and Collins were riding and identified it as being of the same make and color as the one in which the robber and driver had fled. He also identified a red cap and blue overcoat shown him as the cap and overcoat worn by the robber. When Stellhorn first viewed appellant and Collins, at which time Collins was wearing the cap, he was unable to identify appellant. At the direction of Officer Harr, the red cap and blue overcoat were then placed on appellant and Stellhorn said, "That's the man." At the trial, Stellhorn explained that when at the police station he wanted to be sure of his identification and was not positive that appellant was the man who robbed him until he viewed him wearing the blue overcoat and red cap and that when appellant had donned them, he was positive. At the trial Stellhorn pointed out appellant as the man who robbed him and testified that there was no doubt in his mind appellant was the robber.

The evidence also showed that appellant had been convicted of and imprisoned for the five felonies alleged in the information and that he had been lawfully discharged from imprisonment either upon compliance with the sentences imposed or upon commutation by the Governor.

At 4:00 p. m., April 21, 1959, the jury retired to deliberate upon its verdict. At 5:25 p. m., it returned a verdict as follows:

"We, the jury in the above entitled cause, find the defendant guilty of Robbery 1st degree; and assess his punishment at 10 years to life imprisonment without eligibility for parole under 10 years."

Upon reading the verdict, the court told the jury that the verdict was "not in proper form" and that the court could not "receive or accept this as a verdict." The jury was directed to return to its room and refer to Instruction No. 8. Defendant's request for a mistrial was denied. Thereafter, the jury returned a second verdict, which the court accepted. Omitting the caption of the case and signature of the foreman, it reads as follows:

"We, the jury in the above entitled cause, find the defendant guilty of Robbery 1st degree. We further find the defendant has formerly been convicted of a felony and assess his punishment at imprisonment in the penitentiary for the remainder of his Natural Life."

Thereafter, following the overruling of appellant's timely filed motion for new trial and allocution, judgment was entered in conformity with the latter verdict.

Appellant's first contention is that the court erred in giving Instructions Nos. 4 and 6. Instruction No. 4, in form many times approved when applicable, states insofar as here material:

"All persons are equally guilty, who act together with a common intent in the commission of a crime, and a crime committed by two or more persons act-

ing jointly, is the act of all and of each one so acting. However, the mere presence of one at or near the scene of a crime, does not render that-person liable as a participator therein. * *."

Instruction No. 6, submitting in due form the issue of appellant's guilt of robbery as charged in the information, is complained of solely upon the ground that it contained the phrase that the defendant, *"either acting alone or jointly with another* did", etc. (Emphasis supplied.)

■ Appellant says that these instructions were erroneous and prejudicial "because there was no evidence that defendant aided, assisted or abetted with another to commit robbery; [they were] beyond the evidence and in direct conflict with the State's attorney theory of the case, all of which was based on the premise that defendant actually committed the physical act of robbery." Cited in support of that contention are: State v. Farmer, Mo.Sup., 111 S.W.2d 76; State v. Hesselmeyer, 343 Mo. 797, 123 S.W.2d 90; State v. Hands, Mo. Sup., 260 S.W.2d 14; State v. Ruffin, Mo. Sup., 286 S.W.2d 743; State v. Alberson, Mo.Sup., 316 S.W.2d 529; State v. Pease, Mo.Sup., 133 S.W.2d 409; and State v. Walker, Mo.App., 110 S.W.2d 780.

We think appellant errs in contending that the foregoing instructions are "absolutely at war with and contrary to the State's theory of the case." While appellant alone was on trial, yet he and Collins were charged jointly with the commission of the robbery and there was evidence from which the jury reasonably could infer that Collins in some degree aided and abetted therein. In the Ruffin case, cited by appellant, 286 S.W.2d 743, 747, we said:

"The law is well settled that a person who conspires with another to commit a burglary may be convicted of such burglary as an actual participant although not physically present at the scene of the crime at its commission and such a conspiracy may be shown by circumstantial evidence. State v. Williams, 356 Mo. 1048, 204 S.W.2d 748, 749, and authorities therein cited."

The Pease case, 133 S.W.2d 409, 414, somewhat similar in its facts, expressly approved the giving of an instruction such as those here challenged. The Alberson case, 316 S.W.2d 529, the Hands case, 260 S.W.2d 14, and the Walker case, 110 S.W.2d 780, under facts not here analogous, approved the giving of such an instruction. The Hesselmeyer case, 123 S.W.2d 90, 98, although disapproving such an instruction under the facts there shown, is readily distinguishable because of those facts. There a husband and wife were jointly tried for offense of operating a bawdyhouse. It was held that an instruction declaring that if "defendants, and each acting alone or together, or either of them" were keepers of house, and "defendants" knew the house was so used, then jury might convict, was erroneous as authorizing a verdict against both upon proof that at least part of constituent facts applied only to one. None of these cases supports appellant's contention.

The case of State v. Farmer, Mo.Sup., 111 S.W.2d 76, 79, upon which appellant places special reliance, is also distinguishable upon its facts. In that case, Farmer was charged with robbery of a bank in Boone County. The evidence in behalf of the State showed that *two* men participated in the robbery, to wit: Farmer and one Griffith. During the course of the trial there was reference to an unidentified *third* man as a possible participant in the robbery and one Herman Wade was permitted to testify in behalf of the State that some two or three weeks before the robbery the defendant and Griffith and *witness' father, Wilson Wade,* while enroute from Moberly to Higbee in an automobile driven by the witness, had left the car and engaged in a private conversation out of witness' hearing. It was also shown in evidence that Griffith *and Wilson Wade* were in the penitentiary at the time of the trial. Presumably, upon the basis of this testimony, the trial court instructed the jury:

"* * * that when two or more persons are charged with the commission of a crime, it is not necessary for the state to prove that all of them were actually present all the time and taking active part in the commission of said crime; * * *

"If, therefore, the jury believe and find from the evidence that the defendant *and Wilson Wade* and another person by the name of George Griffith agreed, conspired or combined with each other to commit the crime alleged in the amended information herein, then from the time such conspiracy was formed until it was accomplished or abandoned as shown by the evidence, the act of one was the act of all.

"And if the jury find from the evidence that the defendant *and Wilson Wade* and the said George Griffith, while acting together with a common purpose and design, as hereinbefore explained, drove to the State Bank of Hallsville (Missouri) in an automobile *and the said Wade remained at said automobile,* and the defendant and the said George Griffith entered said bank building, and that the defendant, for the purpose of aiding and assisting the said George Griffith in robbing said bank, * * *." (Emphasis supplied.)

The opinion then states: "The instruction was probably based upon the testimony of Herman Wade as to the occurrences on the trip from Moberly to Higbee and back some two or three weeks before the robbery. * * * It is not sufficient, in any event, to justify a finding of conspiracy to commit a crime, much less the particular crime in question. * * * All this, at most, could only be said to raise a mere suspicion that the three alleged conspirators might have been contemplating some nefarious act, even if it can be said to do that much, and mere suspicion is not sufficient to authorize conviction of crime. There was no evidence, as is conceded by the State, that Wilson Wade was present at the

time of the robbery and remained outside the bank in a car while the robbery was being accomplished. There was no evidence, even, that the robbers came or departed in a car. No one testified to seeing a car. That fact, if a fact, rests upon supposition." The court then held the instruction prejudicially erroneous.

There is no analogy whatever between the facts in that case and those in the instant case. Here, the evidence showed that only some fifteen minutes elapsed from the time appellant entered Stellhorn's service station and the time he and Collins were arrested. May it not be reasonably found that Collins, with whom appellant was riding when arrested, was the same man who was sitting in the parked car which appellant entered as he sought to escape from the service station and that Collins had designedly parked his car near the service station as an aider and abetter of appellant in the commission of the robbery? We think it may be. Considering the similarity of the automobile in which the two men drove rapidly away from the station to the automobile in which they were arrested; the fact that appellant no longer wore a red cap and that Collins did wear one; the fact that Collins undertook to hide the red cap when apprehended by Officer Harr; and the fact that upon search of both men, there was found, divided between them, the approximate amount of money taken from Stellhorn's cash register, a substantial portion of which was of the denominations taken from the register: we think these facts warrant the submission of the issue of appellant's acting in concert with another in committing the robbery. So finding, we must and do hold that the court did not err in giving the instructions of which appellant complains. See State v. Pease, Mo. Sup., 133 S.W.2d 409, 414.

In his closing argument to the jury, counsel for the State referred to the fact shown in evidence that Officer Schuchardt made notes of the description of appellant as given to him by Stellhorn and started to argue: "He (Schuchardt) had that paper

with him. You will recall that. I asked him what he did—" Counsel for appellant objected as follows: "That evidence was excluded. I object to arguing evidence not before this jury. * * * I ask the court to instruct the jury to disregard that." The court overruled the objection. Counsel for the State continued: "At any rate, Schuchardt told everyone of you the description given him by Stellhorn, red cap, blue overcoat, five feet eight, 160 pounds and approximately 40 years of age and needed a shave. How close can you get?" Later in his argument, counsel for the State said of the notes made by Schuchardt: "He reached in his pocket for his notes and you know what happened." Counsel for appellant asked the court to instruct the jury to "disregard that." The court thereupon sustained the objection and directed the jury: "The jury is instructed to disregard that line of argument. It is improper. Stay within the evidence."

In connection with the foregoing, the record also shows that, reading from Schuchardt's priorly taken deposition, counsel for appellant had interrogated him as follows:

"Q. 'Did he give you any description of the fellow who held him up, other than that? A. Just that he was a white man, I think he said five feet, eight, 160 pounds, dark complexioned; he was wearing a red cap and a brown overcoat—I think it was tan or brown trousers.' Did you say that on the occasion of this deposition? A. I can't remember, sir. I know I got in my report it was a blue overcoat, the original."

The court sustained an objection made by counsel for appellant, ordered the answer stricken and instructed the jury to disregard it. Thereafter, on redirect examination, Schuchardt was asked if he wrote down what Stellhorn had told him with reference to appellant's description. The court sustained appellant's objection, but stated that "I will permit [counsel for the State] to rehabilitate [the witness] if he can." Notwithstanding the suggestion made by the court, counsel for the State abandoned any further reference as to what Schuchardt had written and, without objection, interrogated the witness only as to what Stellhorn had *told* him.

■■ Appellant contends that the court erred in overruling his objections to the argument above detailed and his request that the jury be instructed to disregard it on grounds that it concerned a matter outside the evidence and was so prejudicial as to deny appellant a fair trial. The trial court has a broad discretion in determining the propriety of statements made in argument. At no time did appellant request a mistrial. We need not pursue the matter further; it is apparent that the court committed no error prejudicial to appellant in the rulings above set forth.

■ We now consider the objection made to the court's rejection of the first verdict returned by the jury, the direction given the jury to reconsider its verdict in the light of Instruction No. 8, and the later verdict returned and accepted by the court. Supreme Court Rule 27.03, V.A.M.R., insofar as pertinent, provides: "Where the jury finds a verdict of guilty and assesses a punishment not authorized by law, * *, the court shall assess and declare the punishment, and render judgment accordingly." That rule charges the trial court with the duty of assessing the punishment when the jury returns a verdict that is defective as to the punishment assessed. State v. Hampton, Mo.Sup., 317 S.W.2d 348, 352–353 [1–4]. Robbery first degree, not alleged and proved to have been committed by means of a dangerous and deadly weapon (the information in the instant case did not so allege), is punishable by imprisonment in the penitentiary for not less than five years. Section 560.135 RSMo 1949, V.A.M.S. Therefore, the first verdict returned was defective in appending to the punishment of ten years definitely assessed

.the .additional provisions hereinabove set forth.

■ Should the court have accepted the verdict assessing appellant's punishment at ten years imprisonment in accordance with the punishment fixed definitely and with certainty by the jury? For the reasons hereinafter stated, we have concluded it should. By Instruction No. 6, the court, without mention of prior convictions or the assessment of punishment, submitted simply the issue of appellant's guilt of the robbery charged in the information. By Instruction 7, the jury was properly cautioned as to the sole purpose of the admission of evidence relating to former convictions. By Instruction No. 8, the jury was advised (a) as to the punishment (life imprisonment) to be assessed if it found appellant guilty of the robbery charged and further found that he had been priorly convicted, etc., of all or any of the felonies specifically set forth in the instruction (as charged in the information and detailed in the evidence), and (b) that, if the jury found that he had not been priorly convicted, etc., of any of the prior felonies detailed in the instruction, but did find him guilty of the robbery charged, then the jury was to assess his punishment at not less than five years. When, however, the jury returned its verdict without any finding whatever as to prior convictions, such verdict, as we have consistently held, amounted to rejection by the jury of the hypothesis of appellant's prior convictions. State v. McBride, 334 Mo. 890, 68 S.W.2d 688, 690; State v. Sumpter, 335 Mo. 620, 73 S.W.2d 760, 763.

■ Although we cannot know what effect the rejection of the first verdict and the direction given the jury to reconsider its finding in the light of Instruction No. 8 may have had upon the jury, yet we do think it may reasonably be inferred that its later return of a verdict clearly at variance with its original finding was the result of an understanding on its part that the court required it so to find. Under these circumstances, we are convinced that the original verdict should have been accepted and that the punishment of appellant should and must be assessed at imprisonment for a term of ten years. See State v. Sumpter, supra, 73 S.W.2d loc. cit. 763.

Supreme Court Rule 28.15, V.A.M.R., provides:

"No judgment shall be reversed or set aside by the appellate court for the reason that the judgment by virtue of which the defendant is confined, and from which he has prosecuted an appeal, was erroneous as to the time or place of imprisonment; but in such case it shall be the duty of the appellate court to sentence such person to the proper place of confinement and for the correct length of time, from and after the date of the original sentence, and to cause the officer or other person having such prisoner in charge to convey him forthwith to such designated place of imprisonment."

See also State v. Sumpter, supra, and State v. Humphrey, 357 Mo. 824, 210 S.W.2d 1002, 1005, wherein this court entered judgment and sentence in accordance with the provisions of this rule.

Accordingly, it is ordered and adjudged, effective of the date of the original judgment, to wit: June 12, 1959, that appellant Earl Lucian Satterfield be confined in the State Penitentiary of Missouri for a term of ten years and that the marshal of this Court convey said Earl Lucian Satterfield to the State Penitentiary and deliver him to the warden thereof, if he be not now confined, there to be imprisoned for the period of his sentence, or until he be otherwise discharged by due course of law; and it is further ordered that the clerk of this Court furnish the warden with a certified copy of this judgment.

The judgment of the trial court is so modified and, as modified, is affirmed.

All concur.