STATE of Missouri, Respondent,

v.

Michael D. FEW, Appellant.

No. KCD 27574.

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer
Denied Nov. 3, 1975.

Gerald M. Handley, Acting Public Defender, Philip H. Schwarz, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

Defendant, having been charged by information with the crimes of burglary, second degree, and stealing, was tried before a jury and found guilty of burglary but not of stealing. Since he had been tried as a second offender, the trial court fixed and imposed sentence of five years. He appeals, claiming that the evidence was insufficient to sustain the conviction because there was no evidence from which the jury could find that he broke into the building in question.

From the evidence presented at trial the jury could have found that on the evening of October 13, 1973, James E. King, relief manager of the Revco Drug Store at 1319 Brush Creek, Kansas City, Missouri, closed and locked the store at about 9:00 p. m. He locked the three possible entrances to the store, the front door, the back door, and an overhead garage door next to the back door. He also checked to see whether anyone else was in the building and found no one else there. About 7:00 a. m., Police

Officer Charles Pottinger responded to a call at this Revco Drug Store. He pulled his patrol car up to the rear of this building and, as he did so, observed the closed garage door quiver. He went to the door to see if it was locked. It was not locked and he lifted it without any resistance and entered the building. Upon doing so he observed two men run from the room. The officer called for assistance, drew his revolver and pursued. Defendant was one of the two men caught in the ensuing chase inside the store. Defendant was promptly given his Miranda warnings and subsequently told the officer that his name was Michael Wright. The store was in a state of disarray. Money was scattered near the coin drawer, and $140 was missing. A drawer containing controlled substances located behind the prescription counter was also missing, and several other drawers containing narcotics had been rifled.

There was no evidence that any of the windows or doors to the building had been broken or tampered with in an attempt to gain forcible entry. The garage door latch which bolted through the sliding track had been sawed through, but there was no opening in the garage door whereby this latch could have been sawed from outside the building.

Upon interrogation by the police, defendant stated that he had been called by a third party and told about some drugs and narcotics being taken from this drug store and that he and another party by the name of Sidney Williams went to the drug store and entered. Shortly after they entered the police arrived and arrested them. Sidney Williams appeared at the trial as a witness for defendant and testified that he was the man arrested with the defendant at the Revco Drug Store on October 14, 1973. According to Williams, he and the defendant were walking through the store's lot when a man wearing a janitor's uniform asked them to help him carry some boxes from the open storeroom to a parked car; they agreed to help him and entered the storeroom through the open garage door;

as Williams entered he accidentally kicked the boxes supporting the garage door and it fell shut; it reopened "real quick," a policeman was there with a gun, and he arrested them.

Both at the trial level and here, defendant has emphasized the fact that the only evidence of tampering with any door or window was the sawing through of the bolt on the overhead garage door. Since the evidence showed that this could not have been done from the outside, defendant suggests that the evidence shows only a breaking out, not a breaking in as required in order to show the commission of burglary.

■ One answer to this argument is that no inference can be drawn that there was no breaking in simply from the absence of physical evidence of some tampering with a place of entry. Rather the jury may infer that there was a breaking in from evidence that the owner or someone in his behalf checked the premises and locked all entrances shortly before the unauthorized entry and theft, even though no physical evidence appears of any broken place of entry and the method of entry is left wholly unexplained. *State v. Bradley,* 485 S.W.2d 408 (Mo.1972); *State v. Young,* 345 Mo. 407, 133 S.W.2d 404 (Mo.1939).

■ A more satisfying answer to defendant's argument, however, is that the opening of the garage door from the inside was not simply to let a thief out, but obviously was for the real purpose of facilitating the entry into the store of one or more confederates who could then help in carrying out the criminal enterprise. To illustrate in the simplest terms, let us assume that defendant hid himself within the premises before closing time and after King locked the store and left, defendant proceeded to saw through the bar on the garage door. This breaking of the door was not simply to get out, as is demonstrated by the fact that defendant was apprehended inside the store together with and in the company of Williams. Consistently with the assumption

hypothesized, the jury could very reasonably have inferred that defendant cut the bar and broke the overhead door for the purpose of letting his confederate Williams into the store to help him in garnering the fruits of the crime.

Moreover, this further question introduces into the analysis: what became of the money and drugs identified as being missing from the store? The jury legitimately could have inferred that a group of confederates had cooperated in already accomplishing the removal of those items before the police arrived and that defendant and Williams were in the course of getting out still more. That other persons in addition to defendant and Williams were in fact involved in the thievery is evidenced by defendant's statement to the police that he and Williams had gone to the store after having been called by a third party and also by the trial testimony of Williams to the effect that he and defendant had entered the store in order to help some unidentified third party to remove merchandise from the store. The breaking of the garage door to admit entry of additional conspirators would be sufficient to support a finding of burglary, even though the breaking was accomplished from the inside by one of the conspirators already within the building.

Of course if there was a conspiracy to burglarize this Revco Store, defendant was bound by the acts of his confederates, and the act of one was the act of all. *State v. Rhodes*, 408 S.W.2d 68 (Mo.1966); *State v. Ruffin*, 286 S.W.2d 743 (Mo.1956). That defendant was a confederate in the burglary could have been inferred reasonably by the jury from the facts that he was present along with Williams inside the drug store which had been recently broken into at an early morning hour when the store was closed, their flight when confronted by a police officer, the condition of the storeroom where defendant was found, his giving a false name to the police when arrested and the statement he gave the police when interrogated. *State v. Burnley*, 480 S.W.2d 881 (Mo.1972); *State v. Fowler*, 473 S.W.2d 353 (Mo.1971); *State v. Lindner*, 282 S.W.2d 547 (Mo.1955); *State v. Ruffin*, supra.

Affirmed.

All concur.